IN RE ORDER REQUIRING FINGERPRINTING OF A JUVENILE.

[Cite as In re Order Requiring Fingerprinting of a Juvenile (1989), 42 Ohio St. 3d 124.]

(No. 88-5—Submitted February 7, 1989—Decided May 3, 1989.)

*Purola & Savage* and *Albert L. Purola,* for appellant.

*John E. Shoop,* prosecuting attorney, and *Ron Graham,* for appellee.

ALICE ROBIE RESNICK, J. The sole issue presented in this case is: Under what circumstances may a juvenile court judge order the fingerprinting of a juvenile pursuant to R.C. 2151.313 (A)(1)?

R.C. 2151.313 provides in pertinent part:

"(A)(1) Except as provided in division (A)(2) of this section, no child shall be fingerprinted or photographed in the investigation of any violation of law without the consent of the juvenile judge.

"(2) Fingerprints and photographs of a child may be taken by law enforcement officers when the child is arrested or otherwise taken into custody for the commission of an act that would be a felony if committed by an adult, without the consent of the juvenile judge, when there is probable cause to believe that the child may have been involved in the commission of the act. A law enforcement officer who takes fingerprints or photographs of a child under this division immediately shall inform the juvenile court that the fingerprints or photographs were taken, and shall provide the court with the identity of the child, the number of fingerprints and photographs taken, and the name and address of each person who has custody and control of the fingerprints or photographs or copies of the fingerprints or photographs."

Juvenile proceedings are not crimi-

nal in nature. *State* v. *Carder* (1966), 9 Ohio St. 2d 1, 11, 38 O.O. 2d 1, 7, 222 N.E. 2d 620, 627; *State* v. *Davis* (1978), 56 Ohio St. 2d 51, 10 O.O. 3d 87, 381 N.E. 2d 641. However, it is well-settled that a juvenile is as entitled as an adult to the constitutional protections of the Fourth Amendment. *Id.* at 56, 10 O.O. 3d at 90, 381 N.E. 2d at 645. The taking of the juvenile into custody for the purpose of obtaining nontestimonial evidence, such as fingerprints, is clearly within the scope of the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. "Detentions for the sole purpose of obtaining fingerprints are no less subject [than other investigatory detentions] to the constraints of the Fourth Amendment. * * *" *Davis* v. *Mississippi* (1969), 394 U.S. 721, 727. The crucial question then is whether this intrusion can be constitutionally justified in the absence of a finding of probable cause.

The United States Supreme Court in *Hayes* v. *Florida* (1985), 470 U.S. 811, 817, in addressing circumstances when fingerprinting may be constitutionally permissible, stated:

"We also do not abandon the suggestion in *Davis* [v. *Mississippi* (1969), 394 U.S. 721] and *Dunaway* [v. *New York* (1979), 442 U.S. 200] that under circumscribed procedures, the Fourth Amendment might permit the judiciary to authorize the seizure of a person on less than probable cause and his removal to the police station for the purpose of fingerprinting. We do not, of course, have such a case before us. We do note, however, that some States, in reliance on the suggestion in *Davis*, have enacted procedures for judicially authorized seizures for the purpose of fingerprinting. The state courts are not in accord on the validity of these efforts to insulate investiga-

tive seizures from Fourth Amendment invalidation. Compare *People* v. *Madson*, 638 P. 2d 18, 31-32 (Colo. 1981), with *State* v. *Evans*, 215 Neb. 433, 438-439, 338 N.W. 2d 788, 792-793 (1983), and *In re an Investigation into Death of Abe A.*, 56 N.Y. 2d 288, 295-296, 437 N.E. 2d 265, 269 (1982)." (Footnote omitted.)

The court in *People* v. *Madson* (Colo. 1981), 638 P. 2d 18, 31-32, in discussing the Colorado statute enacted to permit fingerprinting and other methods of nontestimonial identification on less than probable cause, stated:

"Crim. P. 41.1 was an outgrowth of *dicta* in *Davis* v. *Mississippi*, 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969), suggesting that limited intrusions based on less than probable cause might be constitutionally permissible under narrowly defined circumstances. Subsequent cases of the United States Supreme Court have addressed the propriety of such intrusions in various contexts. See, *e.g.*, *Michigan* v. *Summers*, [452] U.S. [692], 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981); *United States* v. *Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975); *Adams* v. *Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); *Terry* v. *Ohio* [(1969), 392 U.S. 1]. These cases suggest that limited intrusions into privacy on less than probable cause are reconcilable with Fourth Amendment guarantees when the following conditions exist. First, there must be an articulable and specific basis in fact for suspecting criminal activity at the outset. Second, the intrusion must be limited in scope, purpose and duration. Third, the intrusion must be justified by substantial law enforcement interests. Last, there must be an oppor-

tunity at some point to subject the intrusion to the neutral and detached scrutiny of a judicial officer before the evidence obtained therefrom may be admitted in a criminal proceeding against the accused."

Other states have also followed the dicta of both *Davis* v. *Mississippi, supra,* and *Hayes* v. *Florida, supra,* by enacting statutes and rules authorizing their courts to compel a person who is no more than a suspect to come forward and supply nontestimonial evidence. See 5A Ariz. Rev. Stat. Ann. Section 13-3905; 4A Idaho Code Section 19-625; N.C. Gen. Stat. Section 15A-271 *et seq.*; Utah Code Ann. Section 77-8-1 (lineups only).

However, R.C. 2151.313(A)(1) appears to require *immediate* participation by the juvenile court judge, whereas in *Madson, supra,* it was held: "Last, there must be an opportunity *at some point* to subject the intrusion to the neutral and detached scrutiny of a judicial officer before the evidence obtained therefrom may be admitted in a criminal proceeding against the accused." (Emphasis added.) *Id.* at 32. In *State* v. *Davis, supra,* this court stated that " '[t]he purpose of * * * [R.C. 2151.31 now 2151.313] is not to determine * * * admissibility into evidence [of fingerprints] but rather to conform to the theory that juvenile proceedings are not criminal in nature.' " *Id.* at 56, 10 O.O. 3d at 90, 381 N.E. 2d at 645. Therefore, the last factor of *Madson* has no relevance to the validity of an order issued pursuant to R.C. 2151.313.

R.C. 2151.313, when read in its entirety, appears to permit a juvenile court judge to order fingerprinting without finding probable cause in certain situations. We, however, follow the reasoning of the *Madson* court and hold that before an order for fingerprinting may be issued by the juvenile court judge pursuant to R.C. 2151.313 (A)(1), there must be a finding that: (1) there is an articulable and specific basis in fact for suspecting criminal activity; (2) the intrusion is justified by substantial law enforcement interests; and (3) the intrusion is limited in scope, purpose and duration.

Therefore, in applying the foregoing criteria to the facts of this case, we find that the court had sufficient evidence from which to determine that the Madison Fire District was investigating numerous explosions from homemade pipe bombs in the Madison area; that the authorities had received information from students and teachers that the appellant had been discussing the construction of homemade pipe bombs in school; that the authorities were in possession of a palm print taken from an unexploded pipe bomb; that fragments of other bombs that had been detonated may yield additional fingerprints; and that due to the possibility of pipe bomb explosions in the future, the safety of the public necessitated the limited intrusion to obtain appellant's fingerprints.

Based upon the foregoing facts, there was sufficient evidence before the juvenile court judge to find an articulable and specific basis in fact for suspecting that the juvenile was involved in criminal activity; further, the fingerprinting of the juvenile was justified by substantial law enforcement interests in order to protect the public safety; and last, the intrusion was limited to the taking of the juvenile to the police station for the sole purpose of fingerprinting. Hence, the court was correct in issuing an order compelling the appellant to accompany the officer to the police station for the limited purpose of fingerprinting. Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES, WRIGHT and H. BROWN, JJ., concur.

SWEENEY and DOUGLAS, JJ., separately dissent.

SWEENEY, J., dissenting. I must respectfully dissent from the disposition of the present case because I believe the majority misconstrues the structure and intent of R.C. 2151.313.

As the majority readily concedes, the fingerprinting order at issue in the case *sub judice* was not supported by a trial court determination of probable cause, but rather was predicated upon mere suspicion that the juvenile was involved in the incidents under investigation. Nevertheless, the majority concludes that, with respect to an order emanating from the juvenile court, a probable cause determination is unnecessary. To reach this conclusion, the majority ignores the requirements of Section 14, Article I of the Ohio Constitution, the Fourth Amendment to the United States Constitution and the plain language of R.C. 2151.313(A).

The order prescribed by R.C. 2151.313(A)(1) constitutes nothing more and nothing less than a search warrant. Its function is to provide judicial authorization for an otherwise impermissible intrusion upon the rights of a private citizen protected by the state and federal Constitutions. As acknowledged by the majority, it is "well-settled" that these protections extend to juveniles. But the protections to which the majority refers will constitute more than "a form of words" only if the judicial authorization for fingerprinting contained in R.C. 2151.313(A)(1) comports with constitutional principles. It is axiomatic that judicial review of state legislation begins with the presumption that the General Assembly possessed an awareness of and sought compliance with the requirements of the state and federal Constitutions. R.C. 1.47(A); *Hopkins* v. *Kissinger* (1928), 31 Ohio App. 229, 166 N.E. 916, paragraph three of the syllabus. Moreover, where legislation is susceptible to both a constitutional and an unconstitutional interpretation, it is the duty of the reviewing court to choose a construction of the statute which would uphold its validity. See *Cincinnati* v. *DeGolyer* (1971), 25 Ohio St. 2d 101, 106, 54 O.O. 2d 232, 234, 267 N.E. 2d 282, 285. In my view, the majority's strained interpretation of R.C. 2151.313(A) places the statute at odds with the requirements of Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution.

It is beyond question that the judicial authorization prescribed in R.C. 2151.313(A)(1) is in the nature of a warrant. Section 14, Article I of the Ohio Constitution provides as follows:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and *no warrant shall issue, but upon probable cause,* supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized." (Emphasis added.)

Nevertheless, the majority has apparently concluded that R.C. 2151.313 (A) was intended to legislatively repeal this provision and similar guarantees found in its federal counterpart. While the constitutionality of a judicial order not founded upon probable cause compelling an individual to submit to fingerprinting has not been addressed by the United States Supreme Court, warrants lacking such a foundation have been deemed invalid. See, *e.g., Whitely* v. *Warden* (1971), 401 U.S. 560, 564, and cases cited therein.

Moreover, the United States Supreme Court in *Davis* v. *Mississippi* (1969), 394 U.S. 721, rejected the argument of the state that investigatory searches were distinct from searches attendant to a formal arrest. The court responded:

"* * * [T]o argue that the Fourth Amendment does not apply to the investigatory stage is fundamentally to misconceive the purposes of the Fourth Amendment. Investigatory seizures would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' We made this explicit only last Term in *Terry* v. *Ohio*, 392 U.S. 1, 19 (1968), when we rejected 'the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a "technical arrest" or a "full-blown search." '

"Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment. * * *" *Davis, supra,* at 726-727.

*Davis* did not involve a situation where an investigatory detention for the purpose of obtaining fingerprints was judicially authorized. However, the court remarked:

"* * * [B]ecause there is no danger of destruction of fingerprints, the limited detention need not come unexpectedly or at an inconvenient time. For this same reason, *the general requirement that the authorization of a judicial officer be obtained in advance of detention would seem not to admit of any exception in the fingerprinting*

*context."* (Emphasis added.) *Id.* at 727-728.

While this observation by the court may be construed to permit judicially authorized fingerprinting on less than probable cause, a more reasonable interpretation would be that such procedure would require an order *predicated upon probable cause.* Otherwise, the order would amount to a slip of paper devoid of foundation similar to a warrant issued upon less than probable cause. The fact that it was issued by a judicial officer would not alter this conclusion.

In *Hayes* v. *Florida* (1985), 470 U.S. 811, the United States Supreme Court reaffirmed the holding in *Davis,* observing:

"None of our later cases have [*sic*] undercut the holding in *Davis* that transportation to and investigative detention at the station house *without probable cause or judicial authorization* together violate the Fourth Amendment. * * *" (Emphasis added.) *Hayes, supra,* at 815.

The majority seeks to distinguish the holdings in *Davis* and *Hayes* by arguing that *either* probable cause *or* judicial authorization is necessary to validate the search. *Dicta* in *Hayes* could be interpreted to support this view. In this regard, it was stated:

"* * * [O]ur view continues to be that the line is crossed when the police, *without probable cause or a warrant,* forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures, *at least where not under judicial supervision,* are sufficiently like arrests to invoke the traditional rule that *arrests may constitutionally be made only on probable cause."* (Emphasis added.) *Hayes, supra,* at 816.

However, adoption of this view would render the acquisition of an order a mere formality since an order (or warrant) not based upon probable cause amounts to a nullity. Thus, the above *Hayes* language calling for "probable cause or a warrant" would more reasonably convey the long-held view that, in a general sense, warrants are required prior to an arrest or seizure, and in those narrow circumstances where a warrant is not necessary, the arrest or seizure must be predicated upon probable cause.

The language of R.C. 2151.313(A) mirrors this constitutional history:

"(A)(1) *Except as provided in division (A)(2) of this section,* no child shall be fingerprinted or photographed in the investigation of any violation of law without the consent of the juvenile judge.

"(2) Fingerprints or photographs of a child may be taken by law enforcement officers when the child is arrested or otherwise taken into custody for the commission of an act that would be a felony if committed by an adult, without the consent of the juvenile judge, when there is probable cause to believe that the child may have been involved in the commission of the act. A law enforcement officer who takes fingerprints or photographs of a child under this division immediately shall inform the juvenile court that the fingerprints or photographs were taken, and shall provide the court with the identity of the child, the number of fingerprints or photographs taken, and the name and address of each person who has custody and control of the fingerprints or photographs or copies of the fingerprints or photographs." (Emphasis added.)

Several observations must be made concerning this provision. As an initial matter, it applies only to juveniles and, as such, must be interpreted to provide procedural protections to juveniles above and beyond those constitutionally mandated with respect to adults. Secondly, the clear and precise language of R.C. 2151.313 (A)(1) evidences a legislative intent that R.C. 2151.313(A)(2) is, in all respects, an exception to the requirements of the preceding subsection. Regrettably, the majority stands the statute on its head by indulging in the misconception that R.C. 2151.313 (A)(1) is an exception to the requirements of R.C. 2151.313(A)(2). This view defies logic. R.C. 2151.313(A)(1) is not an exception to the "probable cause" requirement of R.C. 2151.313(A)(2), nor would it be constitutionally permissible for the legislature to so provide. Rather, R.C. 2151.313(A)(2) is an exception to the order (*i.e.,* warrant) requirement of R.C. 2151.313(A)(1). To interpret the statute otherwise is an affront to the plain language of Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution.

DOUGLAS, J., dissenting. Much has been made concerning R.C. 2151.313. It is my judgment that this statute has no application here. That law contemplates a juvenile judge's permission to secure the fingerprints of a juvenile *after* an apprehension based on probable cause.

Accordingly, since the majority opinion abolishes the Fourth Amendment as to juveniles, a concept with which I am unfamiliar, I respectfully dissent.