**In re NICHOLSON, Appellee.**

[Cite as *In re Nicholson* (1999), 132 Ohio App.3d 303.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74657.

Decided Feb. 16, 1999.

*Direnfeld, Greene & Blackburn Co., L.P.A.,* and *Douglas C. Blackburn,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Joshua T. Cox,* Assistant Attorney General, for appellant.

---

MICHAEL J. CORRIGAN, Judge.

Appellant, the Ohio Department of Youth Services, appeals the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, which permanently enjoined appellant from obtaining a DNA sample from appellee, Steven Nicholson. Appellant assigns one error for review. This court, finding error, reverses the decision of the juvenile court.

On January 9, 1996, appellee, who was seventeen years old at the time, waived the assistance of counsel and entered an admission of delinquency for acts that if committed by an adult would have constituted gross sexual imposition pursuant to R.C. 2907.05. On February 12, 1996, appellee was placed on probation conditioned on intensive probation supervision and sex-offender therapy.

On May 31, 1996, appellee was charged with violating his probation. A hearing was held on July 19, 1996, wherein appellee again waived his right to counsel and admitted violating the terms of his probation. Pursuant to R.C. 2151.335, appellee was committed to the Ohio Department of Youth Services ("O.D.Y.S.") with continued sex-offender treatment. Appellee was transferred to a correction center until mid-October, when he was transferred to a community facility pursuant to R.C. 5139.38.

After his release, appellee was placed on aftercare. As O.D.Y.S. was preparing to release appellee, he received notice that he was to report to the O.D.Y.S.

Regional Office on March 18, 1998, to provide a blood sample for DNA identification.[1] Appellee obtained counsel and moved for temporary and permanent injunctive relief, arguing that appellee had no authority to take the DNA sample. The juvenile court granted temporary relief and set a hearing for March 23, 1998.

Appellee argued (1) that the state had failed to inform appellee of the consequences of his admission in violation of Juv.R. 29(D), *i.e.*, the requirement of submitting a DNA sample; (2) that the DNA sample can be taken when an individual is leaving custody pursuant to R.C. 2151.315(B)(2) only if the individual refused to provide a sample during the intake procedure pursuant to R.C. 2151.315(B)(1); and (3) that R.C. 2151.315 violated appellee's right to be free from unreasonable searches and seizures provided by the Fourth Amendment to the United States Constitution. Appellant argued that since appellee was in custody and had admitted committing acts that would constitute gross sexual imposition if he were an adult, R.C. 2151.315 requires the Director of Youth Services to take a DNA sample from appellee during intake or release procedures.

The trial court continued the matter until April 21, 1998. At that hearing, the trial court ruled that appellant could not obtain the DNA sample, reasoning that when he entered his admission appellee was not apprised of the fact that he would have to give a DNA sample. It did not consider the constitutionality of the statute and/or its application. Appellant timely filed this appeal.

As its sole assignment of error, appellant states the following:

"I. The trial court abused its discretion by enjoining the Ohio Department of Youth Services from collecting a DNA sample from appellee Steven Nicholson. R.C. 2151.315 requires the collection because appellee Nicholson was adjudicated for gross sexual imposition. (See May 6, 1998 judgment entry.)"

Appellant argues that the trial court abused its discretion by enjoining the collection of a DNA sample from appellee for the following reasons: (1) appellee was adjudicated delinquent for committing gross sexual imposition, (2) R.C. 2151.315 requires appellant to collect a DNA sample from appellee, (3) DNA collection under R.C. 2151.315 does not constitute a "consequence" as used in Juv.R. 29(D), and (4) R.C. 2151.315 does not violate appellee's Fourth Amendment right to be free from unreasonable searches and seizures. We agree.

Juv.R. 29(D) requires the court to make a careful inquiry before accepting an admission in a juvenile case. The rule provides:

"The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

---

1. At that time, appellee had reached the age of majority, as he was born on June 16, 1978.

"(1) The party is making the admission voluntarily with understanding of the nature of the allegation and the consequences of the admission;

"(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."

■ An admission in a delinquency case is similar to a guilty plea entered by an adult in a criminal case in that it involves a waiver of the juvenile's right to challenge the allegations of the complaint and to confront witnesses. *In re Christopher* (1995), 101 Ohio App.3d 245, 247, 655 N.E.2d 280, 281–282. Juv.R. 29(D) is analogous to Crim.R. 11(C)(2) in that, before accepting an admission of guilt, the trial court must personally address the juvenile on the record with respect to the areas of inquiry set forth in the rule. *In re McKenzie* (1995), 102 Ohio App.3d 275, 277, 656 N.E.2d 1377, 1378–1379; *In re Jenkins* (1995), 101 Ohio App.3d 177, 179, 655 N.E.2d 238, 239.

■ As with the acceptance of a guilty plea by an adult pursuant to Crim.R. 11(C)(2), the trial court may accept a juvenile's admission only upon the court's "substantial compliance with the provisions of Juv.R. 29(D)." *In re Christopher, supra,* 101 Ohio App.3d at 248, 655 N.E.2d at 282. In the absence of such compliance, the adjudication must be reversed and the juvenile permitted to plead again. *Id.*

■ Before applying Juv.R. 29(D) to the facts of this case, we must first determine whether the issue was preserved for appeal. It is without dispute that appellee did not attempt to withdraw and/or vacate his prior admission of the offense. In such a case, it has been held that failure to request withdrawal of a guilty plea waives any error on appeal. *State v. Betances* (July 10, 1997), Cuyahoga App. No. 70786, unreported, 1997 WL 391334; *State v. Stokes* (March 7, 1996), Cuyahoga App. No. 69032, unreported, 1996 WL 100955. Hence, appellee's failure to seek a withdrawal of his admission constitutes waiver of this issue.

■ Notwithstanding the waiver, this court will address the application of Juv.R. 29(D) to the facts of this case as argued by the parties. In this case, the trial court reasoned that since appellee was not informed that he would be subject to a DNA sample, he did not make his admission "voluntarily with understanding of the nature of the allegation and the consequences of the admission." Juv.R. 29(D)(1). However, not only did appellee voluntarily waive counsel prior to entering his admission, but the fact that by his admission he would be required to provide a DNA sample is not a "consequence" as contemplated by Juv.R. 29(D)(1).

The taking of a DNA sample for identification purposes under R.C. 2151.315, much like the registration and notification requirements of R.C. Chapter 2950, is a collateral consequence of the particular agreement to plead guilty (or admit) to charges. Simply put, the requirement of providing a DNA sample for identification purposes in the event of future crimes does not have an immediate and direct effect upon the range of appellee's punishment. See, *e.g.*, *State v. Moore* (July 16, 1998), Cuyahoga App. No. 73899, unreported, 1998 WL 398209. See, also, *Roe v. Farwell*, 999 F.Supp. 174 (D.Mass.1998) (disclosure requirements of Massachusetts "Megan's Law" does not constitute direct consequence of a plea).

Accordingly, the requirement of providing a DNA sample pursuant to R.C. 2151.315 is remedial and does not violate an otherwise valid plea agreement by imposing additional punishment beyond the agreement's terms. Therefore, the trial court abused its discretion in holding that requiring appellee to submit a DNA sample would result in a Juv.R. 29(D) violation.

■ Moreover, we agree with appellant in that the extraction of blood for DNA samples does not constitute an unreasonable search and seizure under the Fourth Amendment of the United States Constitution. We begin by noting that all statutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision. See *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 639 N.E.2d 31; *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59. Therefore, we begin our analysis with a strong presumption that R.C. 2151.315 is constitutional.[2]

■ We recognize that a "compelled intrusion into the body for blood" must be considered a Fourth Amendment search. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. Normally, a search or seizure is not considered reasonable unless it is accompanied by a judicial warrant issued only after a finding of probable cause. *Skinner v. Ry. Labor Executives' Assn.* (1989), 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639. However, not only are the procedural safeguards required by R.C. 2151.315 more stringent than those required for the issuance of a warrant, but the minimal intrusion of taking a blood sample is outweighed by the state's legitimate interest in recording the identity of a person who is lawfully incarcerated, committed to a secure care facility, or on probation.

Before a DNA sample can be collected under R.C. 2151.315, a child must first be adjudicated a delinquent child for committing acts listed in division (D) of that section. Therefore, the determination whether to draw blood for a DNA sample is based either upon an adjudication of delinquency, which is based upon the

---

2. Again, we note the trial court refused to consider the constitutionality of the statute.

reasonable doubt standard, or upon a constitutionally safeguarded admission by the juvenile that the act was committed. See, also, *In re Appeal in Maricopa Cty.*, 187 Ariz. 419, 930 P.2d 496 (1996). Accordingly, the standard required by R.C. 2151.315 is proof beyond a reasonable doubt, which is a substantially greater burden than the finding of probable cause required for a search warrant.

■ More important, however, is the fact that in the law enforcement context, the state may interfere with an individual's Fourth Amendment interests with less than probable cause and without a warrant if the intrusion is only minimal and is justified by law-enforcement purposes. See, *e.g., Michigan State Police Dept. v. Sitz* (1990), 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412.

■ Initially we note that an inmate and/or probationer has diminished constitutional rights. See, *e.g., Griffin v. Wisconsin* (1987), 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709. Moreover, in weighing the state's interest in creating a DNA bank, the interests of the past and future victims must be given equal consideration with the rights of the inmate and/or probationer.

We find that the state's legitimate interest in creating a DNA identification data bank not only deters a juvenile from committing future sex offenses, but also aids the police in the investigation of past and future crimes. These are legitimate state interests that outweigh the minimally intrusive drawing of blood. See *Skinner, supra; Rise v. Oregon* (C.A.9, 1995), 59 F.3d 1556. In the context of law enforcement, we believe that the taking of a DNA sample under R.C. 2151.315 is analogous to the taking of a fingerprint and/or a hair sample from an individual in custody of the state. Such a seizure is considered administrative and nontestimonial in nature. See, *e.g., In re Order Requiring Fingerprinting of Juvenile* (1989), 42 Ohio St.3d 124, 537 N.E.2d 1286; *Boling v. Romer* (C.A.10, 1996), 101 F.3d 1336.

Accordingly, we find that R.C. 2151.315 is sufficiently narrow in scope to apply only to those individuals adjudicated a delinquent child for committing specific acts. In this case, the minimally intrusive nature of obtaining and analyzing the DNA of a juvenile in custody who admitted to committing gross sexual imposition is a reasonable search and seizure under the Fourth Amendment when considering the nature of the intrusion and legitimate governmental interest of keeping a DNA data bank.

For all of these reasons, the trial court abused its discretion in enjoining appellant from obtaining a DNA sample from appellee. The juvenile court and/or O.D.Y.S. shall have jurisdiction over appellee for the limited purpose of obtaining

a blood sample for the DNA bank. Appellant's sole assignment of error is well taken.

*Judgment reversed.*

SPELLACY, P.J., and ROCCO, J., concur.