Appellant, Dwayne Johnson, appeals a decision in the Butler Court of Common Pleas, Juvenile Division, finding him to be delinquent for having committed complicity to robbery. The trial court's decision is affirmed.
In the early morning hours of December 4, 1999, Brian Kovak decided to drive his friend, Matt Trovillo, to the home of Trovillo's girlfriend. As Kovak stopped his car at a stop sign, appellant rode a bicycle next to the car and told Kovak to get out. Trovillo got out of the car and Kovak was then pulled out of the car. Both Kovak and Trovillo were assaulted and robbed. There were about thirty people involved in the incident.
After several minutes, Kovak was able to break free from the group and ran toward his home. Kovak was so badly beaten that he passed out on the sidewalk. As a result of the assault, Kovak suffered two cracked ribs, a slight concussion, and a collapsed lung. As a result of being struck in the jaw, Trovillo dropped to the ground. Trovillo then curled up in a ball and was struck repeatedly. Kovak testified that his Chicago White Sox jacket and some audiocassette tapes were stolen from his car that night. Trovillo testified that his wallet was stolen.
Appellant was charged with criminal trespass, violation of curfew, and complicity to robbery. At a magistrate's hearing, Kovak and Trovillo both identified appellant as the person who had ridden a white BMX bicycle up to Kovak's car and told Kovak to stop. Appellant's sister and cousin testified that appellant had an alibi and did not participate in the group assault or robbery.
At the conclusion of the hearing, appellant was adjudicated delinquent on all three charges. The criminal trespass and curfew violation offenses were merged into the complicity to robbery offense. Appellant appeals, raising the following assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ADJUDICATED HIM DELINQUENT BY REASON OF COMPLICITY TO ROBBERY.
In his sole assignment of error, appellant argues that it was error for the trial court to make a finding of delinquency based upon complicity to robbery. Appellant insists that the eyewitness testimony regarding appellant was contradictory, that the lighting in the area where the crime occurred was deficient, and that the identification of appellant during the investigation was highly suggestive. Appellant concludes that the identification of appellant as the perpetrator of the crime was unreliable and that the finding of delinquency was erroneous.
Initially, we note that appellant failed to object to the magistrate's decision. Juv.R. 40(E)(3)(b) provides, "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." "The waiver under Juv.R. 40(E)(3)(b) embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal." In re Etter (1998), 134 Ohio App.3d 484, 492, citingGoldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. The Supreme Court of Ohio has stated that "it is well established that failure to follow procedural rules can result in forfeiture of rights." Etter at 492, quoting Goldfuss at 122.
We find that by failing to object to the magistrate's decision, appellant has generally waived his right to assign as error on appeal the trial court's adoption of any finding of fact or conclusion of law. However, an exception to this waiver exists if plain error is found.
In criminal cases, "[p]lain errors or defects affecting substantial rights" that were not brought to the trial court's attention may be addressed through Crim.R. 52(B). Juvenile proceedings are not criminal in nature. In re Order Requiring Fingerprinting of a Juvenile (1989),42 Ohio St.3d 124, 125-126, certiorari denied, 493 U.S. 857,110 S.Ct. 165. Even so, the supreme court has determined that the plain error doctrine, an exception to the waiver rule, may be applied to civil cases, under very limited circumstances. Goldfuss at 122. The supreme court has stated: "we do reaffirm and emphasize that the doctrine is sharply limited to the extremely rare case involving exceptional
circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself." (Emphasis sic.) Id.
This court recently applied a plain error analysis when reviewing a permanent custody case which, like the case sub judice, was not criminal in nature but nevertheless involved a fundamental liberty interest. Inthe Matter of: Patricia Morris (Oct. 16, 2000), Butler App. No. CA2000-01-001, unreported, at 5-6. We are now inclined to adopt the rule that plain error may, in exceptionally rare cases, allow for correction of an error that was not properly preserved for appellate review in the case of a juvenile adjudication.
In his assignment of error, appellant claims that the trial court's adjudication of delinquency was not justified. Essentially, appellant argues that Kovak and Trovillo's identifications of him are unreliable and should not have been considered by the magistrate. Appellant also appears to argue that there was insufficient evidence to sustain his conviction. First, we shall consider whether admission of the identification testimony was plain error.
Both Kovak and Trovillo made in-court identifications of appellant as the person on the bicycle that initially stopped them that night. Appellant points out that the crime occurred at about 12:30 a.m., that it was dark, and that there are inconsistencies between the victims' descriptions of appellant.
At trial, the descriptions of what appellant wore at the time of the crime varied. Kovak testified that appellant wore a black stocking hat and a black jacket. Kovak also testified that appellant was short. Trovillo testified that appellant wore a bandana over his face. Trovillo also testified that appellant wore a black sweatshirt. Craig Bucheit, a police officer for the city of Hamilton, testified that he was involved in the investigation that led to appellant's arrest. The officer testified that appellant wore a stocking cap, but the officer did not recall appellant wearing a bandana.
Kovak testified that he identified appellant about twenty minutes after the incident. Kovak testified that he was shown appellant and another young man, who were sitting in the back of a police cruiser. Kovak admitted that he did not provide the police with a description of appellant before making this identification.
At the hearing, Kovak was asked, "[w]hat is it about [appellant's] individual appearance that makes you remember that he was the one that was on the bike and in your car?" He responded, "I remember his face. It's hard to explain when you see a person you remember them."
Trovillo testified that after the ordeal, he spotted appellant down the street. Trovillo testified that he identified appellant as the person who had stopped Kovak and him to a police officer, and that the police then arrested appellant. When Trovillo was asked how he was able to identify appellant in-court, he answered that he remembered appellant's eyes.
Although Trovillo testified that he spotted appellant in a crowd and brought him to a police officer's attention, Officer Bucheit testified that when he first talked to Trovillo, he was shaken up and could not identify anyone. The officer testified that someone (either a victim or a witness) told him that one of the suspects had been riding a white BMX bicycle. The officer testified that when he saw appellant in the area riding a bicycle matching the description that he had been given, he arrested appellant for trespassing and violating curfew. The officer then placed appellant in the back of his patrol car along with another juvenile.
The officer testified that Kovak was then asked whether he could make an identification. Kovak first was shown the bicycle that appellant had been riding. Kovak identified it as the one he had seen earlier that night. Then Kovak was asked whether either of the two juveniles who were sitting in back of the patrol car were participants in the assault and robbery. The officer testified that Kovak immediately identified appellant as the juvenile who had been riding the bicycle.
The supreme court has stated:
 There is no prohibition against a viewing of a suspect alone in what is called a "one-man showup" when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. * * *
 * * * [P]olice action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. * * *
State v. Madison (1980), 64 Ohio St.2d 322, 332, quoting Bates v. UnitedStates (C.A.D.C. 1968), 405 F.2d 1104, 1106. See, also, Zanesville v.Osborne (1992), 73 Ohio App.3d 580 (one-man show-up identification was not impermissibly suggestive where witness's identification was reliable under five-point analysis). In this case, there were two juveniles seated in the back of the patrol car when Kovak was asked to identify the perpetrator of the crime. Therefore, this was not a "one-man show-up" but a "two-man show-up," which is less suggestive and more reliable.
There must be "a very substantial likelihood of irreparable misidentification" in order to suppress identification testimony. Statev. Jells (1990), 53 Ohio St.3d 22, 27, quoting Simmons v. United States
(1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971. The Supreme Court of Ohio has adopted the following factors to be considered when reviewing an identification procedure and its impact:
 [W]hether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.
Jells at 27, quoting Neil v. Biggers (1972), 409 U.S. 188, 199-200,93 S.Ct. 475, 382. Under the "totality of the circumstances" test, the emphasis is upon the reliability of the identification, not the identification procedures. Jells at 27, citing State v. Lott (1990),51 Ohio St.3d 160, 175; Manson v. Brathwaite (1977), 432 U.S. 98, 114,97 S.Ct. 2243, 2253.
Applying the Biggers factors to the case sub judice, we shall consider whether Kovak's identification of appellant was reliable. Kovak had ample time to observe appellant, who was on a bicycle and trying to stop Kovak's car. The level of attention was high, as appellant was a stranger who had stopped them in the middle of the night. Kovak identified appellant at the show-up without hesitation. There was a very short period of time between the assault and robbery and the identification of appellant. Kovak testified that his identification of appellant occurred about twenty minutes after the incident.
The only factor that is not favorable in our consideration of Kovak's identification is the accuracy of the prior description of appellant. There is not evidence that Kovak provided a description of appellant before identifying him at the show-up. Although the officer could not recall who had done so, a witness to the crime provided him with a description of the bicycle, and appellant was found riding a bicycle matching this description in the area where the crime was committed at a short time after the crime took place. Considering the totality of the circumstance, we find that there is not a very substantial likelihood of irreparable misidentification that would make this testimony unreliable and inadmissible. Appellant has not shown error, let alone plain error.
Moreover, appellant fails to demonstrate that Trovillo's in-court identification of appellant was inadmissible. Officer Bucheit testified that only Kovak was involved in the show-up identification of appellant. As discussed above, Trovillo testified that he initially pointed out appellant to a police officer, and that the police then arrested appellant. There were several police officers on the scene, and there is no evidence indicating that Trovillo identified anyone other than appellant.
Appellant also appears to claim that his conviction was not supported by sufficient evidence. Appellant was ultimately convicted of complicity to robbery. R.C. 2923.03 defines the offense of complicity in pertinent part as:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
* * *
(2) Aid or abet another in committing the offense[.]
R.C. 2911.02 defines robbery in relevant part as:
 (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
* * *
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]
An appellate court's standard of review of a claim of insufficient evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
Reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the elements of complicity to robbery were proven beyond a reasonable doubt. Appellant's actions in stopping Kovak's car allowed the robbery and assault to take place. We find that the record contains sufficient evidence to support appellant's adjudication of delinquency. The assignment of error is overruled.
 _________________________ VALEN, J.
POWELL, P.J., and YOUNG, J., concur.