OPINION
{¶ 1} The defendant-appellant, Shawn Kyle ("Kyle"), appeals the May 9, 2005 Judgment Entry of Sentencing from the Common Pleas Court of Henry County, Ohio.
 {¶ 2} Kyle was evicted from a house owned by Allen Benton at 640 West Maumee Street in Napoleon, Ohio pursuant to court order. He was evicted because he failed to pay more than $5,000.00 in past rent. By the terms of the court order, Kyle was supposed to be out of the residence by 5:00 p.m. on September 8, 2004.
 {¶ 3} On September 8, 2004 at approximately 8:30 p.m., the Napoleon Police Department was dispatched to a fire at 640 West Maumee Street, Napoleon, Ohio. While in route, the Napoleon Police Department, received a 911 call advising that the fire was set intentionally by Kyle. The caller added that Kyle could be located at the residence of Lisa Watson ("Watson"). According to Watson, Kyle told her that he set the home on fire after he moved his belongings out of the home because he didn't want anyone else getting sick due to the black mold in the home. Assistant Fire Marshal Dennis Cupp ("Cupp") examined the exterior and interior of the fire scene and found the areas of origin located on the first level in the middle living/dining room and on the second level located directly above the middle room. He observed that the first level flooring, second level flooring and the roof in that area had collapsed into each other. It was his opinion that the fire was an arson. His conclusion was based in part upon the following factors: (1) that no utilities were hooked up in the house at the time of the fire; (2) the short time span from when the neighbor across the street was outside and observed that everything was okay until the time the fire was in progress; and (3) the rapid progression of the fire.
 {¶ 4} Kyle was arrested at the residence of Watson. He was taken by Patrol Officer Chad Moll to the police department where he was given his Miranda rights and questioned. Then he was transported to the Corrections Center of Northwest Ohio. On October 12, 2004, the jurors of the Grand Jury in the Court of Common Pleas of Henry County, Ohio indicted Kyle for R.C. 2909.02(A)(2), aggravated arson, a felony in the second degree.
 {¶ 5} On March 10, 2005, a jury trial was held and at the conclusion of the jury trial on March 11, 2004, Kyle was found guilty of aggravated arson. On May 9, 2005, the trial court sentenced Kyle to a prison term in the Ohio Department of Rehabilitation and Correction, Correctional Reception Center, Orient, Ohio for a period of four years and ordered him to pay the court costs. In addition, the trial court sentenced him to post release control of up to three years.
 {¶ 6} On June 1, 2005, Kyle filed a notice of appeal and set forth in his brief three assignments of error.
Assignments of Error
 THE COURT'S SENTENCE IS CONTRARY TO LAW AND THE TRIAL COURT COMMITTEDPREJUDICIAL ERROR IN SENTENCING APPELLANT TO GREATER THAN THE MINIMUMSENTENCE
 {¶ 7} In his first assignment of error, Kyle claims that the sentence of four years in prison imposed by the trial court was excessive and contrary to law.
 {¶ 8} In reviewing the sentencing decision of a trial court, an appellate court must "review the factual findings of the trial court under R.C. 2929.19(G)'s `clear and convincing' standard * * *." State v.Martin (1999), 136 Ohio App.3d 355, 361. Thus, a sentence imposed by the trial court will not be disturbed absent a showing by clear and convincing evidence that the trial court committed one of the errors described by R.C. 2953.08(G): the sentence is unsupported by the record; the procedure of the sentencing statutes was not followed or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law.
 {¶ 9} In determining what sentences to impose upon a defendant, a trial court is "granted broad discretion in determining the most effective way to uphold" the two overriding purposes of felony sentencing: "to protect the public from future crimes and punish the offender." State v. Avery (1998), 126 Ohio App.3d 36, 50,709 N.E.2d 875. However, trial courts are required "to make various findings before properly imposing a felony sentence." State v. Alberty
(Mar. 28, 2000), 3rd Dist. No. 1-99-84. In fact, the trial court's findings under R.C. 2929.03, 2929.04, 2929.11, 2929.12, 2929.14, and2929.19, in effect, determine a particular sentence, and a sentence unsupported by these findings is both incomplete and invalid. SeeMartin, 136 Ohio App.3d at 361. Furthermore, an appellate court should not simply substitute its judgment for that of the trial court, as the trial court is "clearly in the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims."State v. Jones (2001), 93 Ohio St.3d 391, 400.
 {¶ 10} Pursuant to R.C. 2929.13(D), a felony of the second degree carries a presumption in favor of a prison term. Kyle was given a four year prison sentence which was not the minimum prison sentence. R.C.2929.14(B) provides the following:
[I]f the court imposing a sentence upon an offender for a felony electsor is required to impose a prison term on the offender, the court shallimpose the shortest prison term authorized for the offense . . ., unlessone or more of the following applies:
 (1) * * *
 (2) The court finds on the record that the shortest prison term willdemean the seriousness of the offender's conduct or will not adequatelyprotect the public from future crime by the offender or others.
 {¶ 11} Kyle was convicted of aggravated arson, a felony in the second degree, which carries a maximum prison term of eight years. R.C.2929.14(A)(2). Prior to the sentencing hearing, the trial court ordered a pre-sentence report and reviewed that report. The sentencing hearing was conducted by the trial court who heard the facts and presided at the jury trial at which Kyle was convicted. During the sentencing hearing, Kyle's counsel requested that if the court believed a prison term was necessary then the minimum term be imposed. The State recommended a prison sentence of five years. The trial court did find that the offense was particularly aggravating and disturbing due to the motive of the fire which the trial court believed to be some form of revenge or payback to the landlord as a result of Kyle's eviction. The Trial Judge found that "to impose the shortest term for this offense would demean the seriousness of the offense and would not adequately protect the public."
 {¶ 12} Based on the record noted above, we find the trial court properly considered the seriousness and the recidivism factors set forth in R.C. 2929.12 and the purposes and principles of felony sentencing set forth in R.C. 2929.11. Furthermore, during the sentencing hearing, the trial court adequately expressed its reasons for imposing a prison term longer than the minimum. Accordingly, the first assignment of error is overruled.
DEFENSE COUNSEL'S PERFORMANCE OF HIS DUTIES WERE DEFICIENT IN THAT HEMADE ERRORS SO SERIOUS THAT HE FAILED TO FUNCTION AS THE COUNSELGUARANTEED BY THE SIXTH AMENDMENT AND APPELLANT WAS PREJUDICED BY SAIDERRORS
 {¶ 13} In his second assignment of error, Kyle claims that his trial counsel was ineffective due to errors that the trial counsel made resulting in Kyle being deprived of a fair trial. Specifically, Kyle argues that the Court Diagnostic and Treatment Center examined Kyle prior to the competency hearing and then his counsel stipulated to the report of Court Diagnostic and failed to present any evidence to the contrary.
 {¶ 14} In order to prevail on a claim of ineffective assistance of counsel, Kyle must establish both of the following:
1. Trial counsel made errors so serious he was no longer functioning ascounsel in the manner guaranteed by the Sixth Amendment; and
 2. There is the reasonable probability that were it not for trialcounsel's errors, the results of the trial would have been different.
See Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley
(1989), 42 Ohio St.3d 136.
Therefore, under this standard, Kyle must show that his counsel's performance fell below an objective standard of reasonable representation and that prejudice arose from that deficient performance. State v.Bradley (1989), 42 Ohio St.3d 126, 142.
 {¶ 15} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone (Dec. 13, 1989), Montgomery App. No. 10564. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id. quoting Smith v. Murray (1986),477 U.S. 527, 535, 106 S.Ct. 2661.
 {¶ 16} Kyle argues that his counsel was ineffective because he did not present any evidence contrary to the Court Diagnostic and Treatment report. Rather, his counsel stipulated to the report and did not present an expert to oppose the Court Diagnostic report. Kyle further claims that he may have been found incompetent to stand trial and would not have been convicted of this offense. However, in order to prevail on this argument, Kyle must show what evidence was available that his counsel failed to present or set forth any errors in the Court Diagnostic and Treatment report. The record in this case shows no such evidence.
 {¶ 17} Kyle's trial counsel did request and obtain an evaluation of Kyle's competency to stand trial prior to the commencement of trial. There is nothing in the record of this case to indicate that the court below should have inquired further into the issue of Kyle's competency or that counsel failed in any essential duty to his client as it pertains to this issue. Accordingly, the second assignment of error is overruled.
THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
 {¶ 18} In his third assignment of error, Kyle argues that the jury's verdict is against the manifest weight of the evidence. Kyle was convicted of aggravated arson in violation of R.C. 2909.02(A)(2), which required the state to prove that the defendant by means of fire or explosion, knowingly caused physical harm to any occupied structure.
 {¶ 19} When reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In contrast, inState v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
[A]n appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidenceadmitted at trial and determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilt beyond a reasonabledoubt. * * * [T]he relevant inquiry * * * [is whether,] after viewing theevidence in light most favorable to the prosecution, any reasonable trierof fact could have found the essential elements of the crime provenbeyond a reasonable doubt.
 {¶ 20} In this case, the jury heard from numerous witnesses that Kyle made statements to indicating that he was going to or already did set the house on fire. According to Watson, Kyle told her on the evening of September 8, 2005 that he was going to set the house on fire because he didn't want others to get sick from the black mold in the house. At approximately 8:00 p.m. he left her house continuing to talk about setting the house on fire; however, she didn't believe that he would follow through with his words. Approximately fifteen to thirty minutes later, Kyle returned asking her for a ride to the bus station and told her that he set the house on fire.
 {¶ 21} Sean Geahlen, Watson's son, also testified that over the course of the evening of September 8, 2004, he heard Kyle state that he was going to set the house on fire. He also testified that Kyle left their house and returned approximately twenty minutes later to tell them that he had burnt the house down. Neither Sean nor his mother believed Kyle until they heard the sirens. Sean also testified that he placed a 911 call to inform the police that Kyle was at Watson's house.
 {¶ 22} Kelly Thompson, an employee of the Napoleon Shell Station, testified that she was working the evening of September 8, 2004 and recalls Kyle coming into the Shell station to purchase a 40 King Cobra and telling her that "his house was going to be toasty warm." He also mentioned to her that they wouldn't be seeing him for a while because he was going away. Approximately twenty to twenty-five minutes later, she witnessed fire trucks heading down the street and one of the customers saying that the house on fire was Kyle's. David Hartley, another employee of the Shell station also testified that he heard Kyle saying that he "hopes it doesn't burn."
 {¶ 23} Furthermore, Assistant Fire Marshal Cupp testified that he examined the exterior and interior and found the areas of origin located on the first level in the middle room and on the second level located directly above the middle room. He observed that the first level flooring, second level flooring and the roof in that area had collapsed into each other. It was his opinion that the fire was an arson. He concluded that with no utilities hooked up at the house and the short time span from when the neighbor across the street was outside and saw everything was okay until the time the fire was set, the fire had progressed too quickly to be an accidental cause.
 {¶ 24} In sum, in reviewing the totality of the evidence, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice. Furthermore, after viewing the entire record and the evidence in the light most favorable to the State, we cannot say that a rationale trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, the third assignment of error is overruled. {¶ 25} Therefore, Kyle's assignments of error are overruled and the judgment and sentence of the Common Pleas Court of Henry County is affirmed.
Judgment affirmed.
 CUPP, P.J., and BRYANT, J., concur.