JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Christopher Hardy appeals from his conviction for kidnapping. For the reasons set forth below, we affirm.
 {¶ 2} In October 2002, defendant was indicted pursuant to a seven-count indictment that charged him with rape, kidnapping, abduction, felonious assault, and domestic violence, all in connection with alleged attacks upon his estranged wife in April 2002. Defendant was eventually convicted of one count of rape, one count of kidnapping and domestic violence. This Court reversed and remanded for a new trial, however, because the trial court responded to jury questions outside of defendant's presence. See State v. Hardy, Cuyahoga App. No. 82620,2004-Ohio-56. This Court found many of defendant's remaining assignments of error moot, but addressed those assignments of error which raised issues "which, if proved, would require entry of judgment in [defendant's] favor." This Court then considered defendant's contentions that the indictment contained multiplicitous counts of rape and kidnapping which were undifferentiated and which implicated "his right not to be tried twice for the same offense." In rejecting these assignments of error, this Court noted that the prosecutor had in fact differentiated the two rape charges, and that the "prosecutor also distinguished the two kidnaping charges, associating each of them with the separate incidents of rape."
 {¶ 3} Upon retrial before a jury, the state's evidence demonstrated that defendant and Mrs. Hardy met while working at the Metzenbaum Center and were *Page 3 
married in October 2001. By 2002, the marriage had become acrimonious. In March 2002, defendant and Mrs. Hardy argued and she decided to leave. Mrs. Hardy testified that her car was blocked in the driveway so she called her sister to pick her up. Defendant called the police who remained at the scene while Mrs. Hardy removed some of her belongings from the home.
 {¶ 4} Mrs. Hardy moved from the residence, but defendant wanted to reconcile. Mrs. Hardy acknowledged that she spent a few nights at the home, but had no intention of moving back in or of reconciling. According to this witness, she continued contact with him in order to obtain the rest of her property, which included bedroom furniture and jewelry.
 {¶ 5} On April 5, 2002, Mrs Hardy and defendant spoke and she went to his home in South Euclid. Defendant left to pick up his daughter and granddaughter and Mrs. Hardy went to a tanning salon. She then took the girls to the grocery store and bought items for dinner, as well as wine and beer. After they ate dinner, Mrs. Hardy took a bath. The girls then watched television in another room while defendant and Mrs. Hardy watched television in defendant's bedroom.
 {¶ 6} According to the witness, defendant pressured her for sex, and she "gave in" because he has a bad temper. Later, defendant began to argue with her over her friendship with a female coworker. Mrs. Hardy started to leave and defendant pulled her back on the bed and began to speak abusively to her. He then inserted three fingers into her vagina, and pulled her across the bed and ripped off *Page 4 
her T shirt. For approximately one hour, he refused to let her leave the bed as he continued to degrade her and refused to let her have her clothing.
 {¶ 7} After defendant calmed down, she went to the kitchen and got a glass of milk. Defendant then threw the milk at her and ordered her out. As Mrs. Hardy got into her car to go, defendant jumped on the hood of the car and pulled on the door handle, breaking both the rear view mirror and the driver's side window.
 {¶ 8} After Mrs. Hardy left the home, defendant contacted South Euclid police to notify them that the woman had returned to his home to get clothes, and that she had been drinking and taking medication. He also stated that he had not touched her or harmed her in any way.
 {¶ 9} The woman testified that she then drove to her home in Geauga County. She tried to call a friend then took a shower and went to bed. The next morning, she called a hotline for help, then went to the sheriff's department and to the hospital. Medical records demonstrated that the woman had injuries to her breast, arm, and thigh, and photographs depicted damage to her car.
 {¶ 10} South Euclid police went to defendant's home to speak with him in connection with their investigation of the matter. According to Det. Ardonetto, defendant raised his fists and was combative, so the officers handcuffed him and took him to the police station. After receiving Miranda warnings, defendant made an oral statement and also made a written statement. Later, after obtaining a bond and being released, he returned to the station and made a second written statement. In *Page 5 
his statement, defendant indicated that Mrs. Hardy had initiated sexual relations and that he was unable to have intercourse due to an injury.
 {¶ 11} Defendant elected to present evidence and testified that, during their marriage, Mrs. Hardy learned that he has significant assets, including certificates of deposit and stock. He further indicated that Mrs. Hardy was able to take all of her possessions from the home in the presence of police so she had no real concern about any remaining property.
 {¶ 12} According to defendant, Mrs. Hardy wanted to reconcile and, on the night of April 5, 2002, although he had plans to be with his daughter and granddaughter, the woman arrived and behaved romantically. She took a bath then changed into a t-shirt, and asked him to lay with her on the bed. He had been injured so he could not have intercourse, despite the woman's attempts. She then asked him to penetrate her digitally. Ultimately, according to defendant, the woman became angry, and left, saying, "I'll fix you. You rejected me."
 {¶ 13} Defendant denied raping the woman or harming her and he denied damaging her car. He believed that the woman's allegations were part of a scheme to get at his assets. He stated that he contacted police after she left simply to notify them that the woman was drinking and driving.
 {¶ 14} Defendant also presented the testimony of various co-workers and former co-workers who testified that he is truthful and nonviolent. Defendant's granddaughter also testified and stated that she did not hear any fighting or arguing. *Page 6 
 {¶ 15} Following deliberations, the jury could not reach a verdict as to the rape charge and the trial court declared a mistrial as to this count. Defendant was convicted of kidnapping, however, and sentenced to three years of imprisonment. He now appeals and assigns twelve errors for our review.
 {¶ 16} Defendant's first and third assignments of error are interrelated and state:
 {¶ 17} "Defendant was denied due process of law and his right not to be placed twice in jeopardy when the court overruled his motion to dismiss."
 {¶ 18} "Defendant was denied due process of law when the prosecutor offered inconsistent positions while presenting the same evidence used at the original trial of defendant."
 {¶ 19} In State v. Cvijetinovic, Cuyahoga App. No. 82894,2003-Ohio-7071, this court noted:
 {¶ 20} "The doctrine of the `law of the case' provides that a `decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' Nolan v. Nolan (1984),11 Ohio St.3d 1, 3, 462 N.E.2d 410. The doctrine functions to compel trial judges to follow the mandates of reviewing courts. Id. When, at a rehearing after remand, a judge `is confronted with substantially the same facts and issues as were involved in the prior appeal, the [judge] is bound to adhere to the appellate court's determination of the applicable law.' Id. Absent extraordinary *Page 7 
circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case. Id. at syllabus."
 {¶ 21} In Hardy I, defendant asserted:
 {¶ 22} "[T]he indictment was multiplicitous because it contained two counts of rape, and two counts of kidnaping and a count of abduction, all of which allegedly occurred on the same date, and the court's jury instructions did not differentiate them. Appellant then argues that the verdicts were inconsistent, somehow implicating his right not to betried twice for the same offense." (Emphasis added).
 {¶ 23} In rejecting these claims, this court stated:
 {¶ 24} "At trial, the prosecutor differentiated the two rape charges, arguing that count one referred to the incident of vaginal intercourse, and count two referred to the incident of digital penetration. The prosecutor also distinguished the two kidnaping charges, associating each of them with the separate incidents of rape. Finally, the prosecutor argued that defendant abducted the victim when he prevented her from leaving the bedroom, pulled off her shirt, and verbally assaulted her. Thus, the charges were not multiplicitous. Given this differentiation of the charges, the jury's verdict finding that the defendant was guilty as to counts two and four, the second rape and kidnaping charges, but not guilty as to counts one, three, and five, were consistent. Therefore, we overrule the fourth and fifth assignments of error." *Page 8 
Id.
 {¶ 25} Because the Hardy I court considered defendant's claim that the indictment was defective since it contained identical counts, and that this implicated "his right not to be tried twice for the same offense," and these claims are substantially the same as the issues raised herein, they clearly constitute the law of the case. As such, they are binding herein.
 {¶ 26} Indeed, in his brief in Hardy I defendant "only challenges the evidence with respect to the incident of vaginal intercourse," seeHardy I at 12. This further demonstrates that he well knew what occurrences formed the bases of each offense.
 {¶ 27} Moreover, this matter is distinguishable from Valentine v.Koteh (6th Cir. 2005), 395 F.3d 626, upon which defendant relies, as that case involved twenty counts of child rape and twenty counts of felonious sexual penetration of his minor stepdaughter. The two offenses were identically alleged and no further information was included to differentiate one count from another. Significantly, theValentine Court noted that "the forty criminal counts were not anchored to forty distinguishable criminal offenses." The Court stated:
 {¶ 28} "In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described `typical' abusive behavior by Valentine and then testified that the `typical' abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented." *Page 9 
 {¶ 29} The Court specifically held, however, that:
 {¶ 30} "The due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial."
 {¶ 31} Id. Accord State v. Rice, Cuyahoga App. No. 82547, 2005-Ohio-393.
 {¶ 32} Similarly, with regard to the issue of double jeopardy, the Court noted:
 {¶ 33} "We cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury. * * * As the charges were not linked to differentiated incidents, there is resulting uncertainty as to what the trial jury actually found."
 {¶ 34} In accordance with the foregoing, "the cure for such identical indictments would be for the prosecution to delineate the factual bases for each account either before or during the trial, so that the judge, defendant and the jury could be able to tell one count from another."State v. Rice, supra. The court's review on this issue is fact-specific, and individual counts will be considered separately and on their own merits. Valentine v. Konteh. supra.
 {¶ 35} This matter, however, involved an adult victim who testified to particular offenses. The record clearly indicates that the prosecution clearly delineated the offenses in the previous trial. See Hardy I ("The prosecutor also distinguished the two kidnaping charges, associating each of them with the separate incidents of rape."). This holding inHardy I, coupled with our remand, undoubtedly provided *Page 10 
defendant notice of the charges he would face on retrial.
 {¶ 36} Moreover, at the retrial, the prosecuting attorney clearly indicated that he was proceeding only on the rape and kidnapping charges for which defendant had been previously convicted, (Tr. 72), and these were the offenses related to the digital penetration, see Hardy I.
Later, in voir dire, the prosecuting attorney said:
 {¶ 37} "In this instance, the allegation is that the Defendant digitally penetrated his ex, his wife's vagina, by force or threat of force." (Tr. 181). (Accord Tr. 299-300).
 {¶ 38} In his opening statement, defense counsel stated:
 {¶ 39} "* * * records show absolutely no injury or anything concerning this claim that he had his fingers in her and pulling her across the bed * * *." (Tr. 308).
 {¶ 40} The complaining witness then testified to an incident of vaginal intercourse which occurred when she "did give in." (Tr. 390). Later, they argued, and according to the witness, she tried to leave, defendant pulled her back into the room, ripped her shirt off, threw her on the bed and inserted the first three fingers of his right hand into her vagina and "hooked onto my pelvic bone and he pulled me across the bed." (Tr. 396-397). She attempted to leave but he pulled her back and kept her there while he continued to degrade her. (Tr. 397).
 {¶ 41} Finally, in his closing argument, defense counsel stated:
 {¶ 42} "We're not talking about vaginal intercourse between a man and a woman. That's not the claim." *Page 11 
 {¶ 43} "The claim here that the State makes is, according to her, that he used three fingers * * * she was pulled either across the bed or on the bed onto the floor or anything in connection to the case." (Tr. 973).
 {¶ 44} In accordance with all of the foregoing, this assignment of error is without merit.
 {¶ 45} Defendant's second and eighth assignments of error are interrelated and state:
 {¶ 46} "Defendant was denied due process of law when the court overruled his motion to suppress."
 {¶ 47} "Defendant was denied due process of law when the court allowed the investigating detective to relate conversation with others together with his opinion concerning the existence of probable cause."
 {¶ 48} R.C. 2935.04 authorizes any person may make a warrantless arrest when a felony has been committed or there is reasonable ground to believe a felony has been committed and when the person making the arrest has reasonable cause to believe the person arrested is guilty of the offense.
 {¶ 49} In Adams v. Williams (1972), 407 U.S. 143, 148, 92 S.Ct. 1921,1924, 32 L.Ed.2d 612, 618, the court explained the concept of probable cause:
 {¶ 50} "Probable cause to arrest depends `upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient *Page 12 
to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' Beck v. Ohio, 379 U.S. 89, 91,85 S.Ct. 223, 225, 13 L.Ed.2d 142 [145] (1964)."
 {¶ 51} In this matter, Mrs. Hardy informed the Geauga County Sheriff's Department that defendant had raped and terrorized her and the sheriff's department informed the South Euclid police of the allegations. Det. Ardonetto testified that he proceeded under this statute to go to defendant's home and arrest him in connection with the investigation of this matter. Defendant then became combative and was arrested. In accordance with all of the foregoing, the trial court did not err in determining that the police officer were within their authority to make a warrantless arrest or defendant as there was reasonable ground to believe that he committed a felony.
 {¶ 52} Moreover, defendant was given his Miranda rights and executed waivers of those rights then gave oral and written statements. Accordingly, these assignments of error are without merit.
 {¶ 53} Defendant's fourth and tenth assignments of error are interrelated and state:
 {¶ 54} "Defendant was denied due process of law when the court overruled defendant's objection to defendant's wife testifying with respect to the kidnapping count."
 {¶ 55} "Defendant was denied due process of law when the court did not limit *Page 13 
the application of sexual conduct in this case."
 {¶ 56} In State v. Bryant (1988), 56 Ohio App.3d 20, 564 N.E.2d 709, the Sixth Appellate District held that a husband charged with kidnapping his wife may not preclude his wife from testifying against him by asserting the spousal privilege set forth in RC § 2945.42, even though "kidnapping" is not specifically listed as an exception in the statute. The Bryant Court stated:
 {¶ 57} "The United States Supreme Court has provided that the witness-spouse, rather than the defendant-spouse, is the holder of the privilege. * *
 {¶ 58} "In the instant case, there is no `public interest' to be served by excluding Peggy Bryant's testimony. The alleged wrongdoer in this case has not only threatened harm to his wife, he has also acted against the public, `* * * and it is for his offense against the public that he is subject to criminal prosecution. When the injured spouse is a witness for the state [her] competency cannot be affected by [her] desires or fears. [She] must testify to protect the public. * * *'" The trial court properly concluded that Mrs. Hardy was a competent witness, pursuant to Evid. R. 601(B) and R.C. 2945.42, and defendant may not assert the privilege set forth in R.C. 2945.42 to preclude her testimony as to the kidnapping at issue.
 {¶ 59} With regard to the definition of sexual conduct as set forth in R.C. 2907.01, this section provides:
 {¶ 60} "(A) `Sexual conduct' means vaginal intercourse between a male and *Page 14 
female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 61} Moreover, defendant cannot invoke a spousal privilege because force alleged, R.C. 2907.02 (A)(2); Hardy I, and he and Dent were living separate and apart. See R.C. 2907.02(1). There is no spousal exclusion for kidnapping or domestic violence. See R.C. 2905.01, and R.C.2919.25.
 {¶ 62} In accordance with the foregoing, these assignments of error lack merit.
 {¶ 63} Defendant's fifth assignment of error states:
 {¶ 64} "Defendant was denied his right of compulsory process when the court refused to enforce a subpoena for Regina Campbell."
 {¶ 65} R.C. 2317.21 provides in relevant part:
 {¶ 66} "When a witness, * * * fails to obey a subpoena personally served, the court or officer, before whom his attendance is required, may issue to the sheriff or a constable of the county, a writ of attachment, commanding him to arrest and bring the person named in the writ before such court or officer at the time and place the writ fixes, to give his testimony and answer for the contempt. * * *"
 {¶ 67} In State v. Wilcox (June 11, 1992), Cuyahoga App. Nos. 60851 60886, this court stated: *Page 15 
 {¶ 68} "In order to obtain the issuance of a writ of attachment from the court in order to secure the attendance of an absent witness, it is necessary for the disobeying witness to have been personally served with a prior subpoena. R.C. 2317.21."
 {¶ 69} In this matter, defense counsel admitted that Campbell was never served with a subpoena. Accordingly the trial court did not err in refusing to issue a warrant for her.
 {¶ 70} Defendant's sixth assignment of error states:
 {¶ 71} "Defendant was denied his right to present a defense when the court would not allow the divorce decree into evidence."
 {¶ 72} Relevant evidence is defined as "any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Evid.R. 401. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 73} We find no abuse of discretion. There was no decree of divorce in *Page 16 
place at the time of the acts at issue so the trial court could properly determine that this evidence was not relevant.
 {¶ 74} Defendant's seventh assignment of error states:
 {¶ 75} "Defendant was denied his right of confrontation and cross-examination when the court admitted medical records of Susan Hardy (Dent)."
 {¶ 76} Testimonial hearsay is admissible against a criminal defendant under the Confrontation Clause only if the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant.
 {¶ 77} "Testimonial hearsay" includes testimony at preliminary hearings, before grand juries, and at former trials, as well as statements elicited during police interrogations. Id. at 51. In addition, the supreme court identified three kinds of statements that might also be regarded as testimonial: (1) "ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51. Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed. 2d 177. *Page 17 
 {¶ 78} Statements made to a medical professional for purposes of receiving medical treatment or diagnosis do not constitute testimonial statements. State v. Stahl, 111 Ohio St. 3d 186, 2006-Ohio-5482,855 N.E.2d 834. In any event, defendant was permitted to cross-examine Mardell Takacs, the nurse who authenticated Mrs. Hardy's medical records.
 {¶ 79} This assignment of error is without merit.
 {¶ 80} Defendant's ninth assignment of error states:
 {¶ 81} "Defendant was denied due process of law and a fair trial where bad acts were offered and statements and conduct by the prosecutor were improper."
 {¶ 82} With regard to defendant's claim that the prosecuting attorney presented evidence regarding offenses for which defendant had previously been acquitted (vaginal rape and kidnapping) and for which defendant was not charged (damage to car), we note that the test for prosecutorial misconduct in closing argument is "`whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" State v. Hessler, 90 Ohio St.3d 108, 125, 2000-Ohio-30,734 N.E.2d 1237, quoting State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883. A new trial will be ordered where the outcome of the trial would clearly have been different but for the alleged misconduct.State v. Brewer (June 22, 1995), Cuyahoga App. No. 67782. When applying this test, we consider "the effect the misconduct had on the jury in the context of the entire trial." State v. Keenan (1993), 66 Ohio St.3d 402,410, 613 N.E.2d 203. *Page 18 
 {¶ 83} Viewing the challenged occurrences within the context of the entire trial, we find no prejudicial error. Mrs. Hardy testified that she "gave in" and that they had vaginal intercourse before the alleged digital rape and kidnapping. As quoted extensively above, it was well understood by all that the offenses centered around the act of digital penetration and holding Hardy on the bed. Moreover, there was no indication that defendant faced further culpability in relation to the car, but this formed part of the state's case in terms of defendant restraining Hardy of her liberty.
 {¶ 84} Defendant also complains that the prosecuting attorney remarked that defendant was of the "Bill Clinton School of Sex.' While inappropriate, this remark was aimed at correcting the notion that digital penetration was not sex.
 {¶ 85} Defendant also challenges portions of the state's closing argument. Generally, prosecutors are entitled to considerable latitude in closing argument. State v. Ballew, 76 Ohio St.3d 244, 255,1996-Ohio-81, 667 N.E.2d 369. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990),51 Ohio St.3d 160, 165, 555 N.E.2d 293, citing State v. Stephens (1970),24 Ohio St.2d 76, 82, 263 N.E.2d 773. Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced." Ballew, supra; State v. Lorraine (1993), 66 Ohio St.3d 414,420, 613 N.E.2d 212.
 {¶ 86} We find no prejudicial error. This assignment of error is without merit. *Page 19 
 {¶ 87} Defendant's eleventh assignment of error states:
 {¶ 88} "Defendant was denied due process of law when the court informed the jury that defendant's testimony was to be given different consideration from that of other witnesses."
 {¶ 89} O.J.I. 405.21 and O.J.I. 405.20 provide for the following instruction:
 {¶ 90} "The testimony of a defendant is to be weighed by the same rules that apply to other witnesses."
 {¶ 91} This instruction was given herein so the assignment of error is without merit.
 {¶ 92} Defendant's twelfth assignment of error states:
 {¶ 93} "Defendant was denied due process of law when the court overruled defendant's motion for judgment of acquittal."
 {¶ 94} "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394.Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, in which the Ohio Supreme Court held:
 {¶ 95} "An appellate court's function when reviewing the sufficiency of the *Page 20 
evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.)
 {¶ 96} In this matter, defendant was charged with kidnapping. The evidence established that he found or restrained the liberty of the other person, for the purposes of engaging in sexual activity, as he held her down and would not let her leave the bed, by inserting three fingers into her vagina which caught on to her pubic bone. Viewed in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of kidnapping proven beyond a reasonable doubt, so the trial court did not err in denying defendant's motion for judgment of acquittal.
 {¶ 97} This assignment of error is without merit.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case *Page 21 
remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., CONCURS. CHRISTINE T. MCMONAGLE, J., DISSENTS (SEE ATTACHED DISSENTING OPINION)