JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Haywood Stubblefield appeals from a judgment of conviction on one count of having a weapon under disability. He maintains that the state failed to present sufficient evidence to show that he possessed an operable firearm and that the court erred by denying his request to substitute counsel. We find no error and affirm.
 I {¶ 2} Stubblefield's first assignment of error complains that the state failed to present sufficient evidence to show that he possessed an operable firearm because testimony showed that he was not apprehended with a firearm. He also maintains that the firearm which the state claimed belonged to him was inoperable at the time it was recovered.
 A {¶ 3} When considering the sufficiency of evidence supporting a conviction, we view the evidence in a light most favorable to the state to determine whether the state presented evidence showing all the elements of the offense. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307, 319.
 B {¶ 4} The elements of possessing a weapon while under disability as charged in this case under R.C. 2923.13(A)(2) are: (1) Stubblefield knowingly *Page 4 
carried or used a firearm, (2) he had been previously convicted of any felony of violence, and (3) he had not been relieved from disability. Stubblefield does not contest the second and third elements of the offense: he had been previously convicted of a felony of violence and he had not been relieved from disability. He maintains, however, that the state failed to show that he actually possessed a "firearm" because there was no evidence to show that he had been seen carrying a gun and that the gun recovered by the state was not "readily operable."
 {¶ 5} The state's evidence that Stubblefield knowingly possessed a firearm came in the form of testimony by the arresting officers and a tape-recorded interview the police conducted with Stubblefield shortly after apprehending him. This evidence showed that the police had received a call to respond to the scene of a burglary and felonious assault, and were ordered to apprehend an armed suspect in a blue, hooded sweatshirt. They found the suspect, later identified as Stubblefield, hiding under a car, but without the gun and sweatshirt that had been described in the radio broadcast. By backtracking from the site where they apprehended Stubblefield to the site of the alleged crimes, the police discovered a blue, hooded sweatshirt in the yard of a house. After additional searching in that area, the police found a gun on the roof of a garage. When the police interviewed Stubblefield, he admitted to carrying the gun, saying that he "flung" it on the roof of the garage as he ran from the scene. During the course of the *Page 5 
interview, he described how he found the gun a few months earlier. When one of the officers conducting the interview said, "[b]ut you know you [sic] not supposed to have a gun, too, right?", Stubblefield replied, "[y]eah."
 {¶ 6} The court, sitting as the trier of fact in this case tried without a jury, could rationally find that Stubblefield possessed the gun. The state not only produced an actual gun, but it offered into evidence Stubblefield's admission that he possessed that gun and threw it away as he fled from the scene. This constituted sufficient evidence from which a rational trier of fact could find that Stubblefield knowingly possessed the gun for purposes of R.C. 2923.13(A)(2).
 C {¶ 7} Stubblefield next argues that the state failed to present sufficient evidence to establish the operability of the gun because the evidence showed that when recovered, the gun lacked a firing pin and was incapable of being fired in that condition.
 {¶ 8} The state charged Stubblefield with having a weapon while under disability pursuant to R.C. 2923.13(A)(2). That section states that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance" if that person "has been convicted of any felony offense of violence[.]" R.C. 2923.11(B)(1) defines a "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible *Page 6 
propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."
 {¶ 9} The requirement that a gun be either operable or readily capable of being rendered operable is meant to distinguish irretrievably broken guns from guns that are either fully functioning or temporarily non-functioning. A gun that jams is only temporarily non-operational because the jam can be cleared-in such cases, the gun is capable of being readily rendered operable. See State v. Easley, Franklin App. No. 07AP-578, 2008-Ohio-468, ¶ 43; State v. Griffin (Feb. 28, 1996), Lorain App. No. 95CA006069. On the other hand, a gun with excessive rusting may be inoperable. While the rust might be cleaned in such a way as to render the gun operable, the removal of the rust might be so time-consuming that the gun could not be said to be capable of being "readily" operable. Ultimately, whether a gun can be readily rendered operable is a question of fact. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, paragraph one of the syllabus.
 {¶ 10} As Stubblefield notes, when the police recovered the gun from the garage roof, it did not contain a firing pin. Although a police officer testified that the gun was inoperable without the firing pin, he described how he placed a firing pin in the gun and then successfully test-fired the gun. He told the court that the gun "could be made to be operable, through my experience, by placing a *Page 7 
pin in it." The officer went on to agree that a firing pin could be kept in one's pocket and be inserted into the gun "relatively easily." Stubblefield did not testify nor did he offer any evidence to refute the police officer's testimony concerning the relative ease with which a firing pin could be inserted into a gun. With the absence of any evidence to the contrary, we find the officer's testimony was legally sufficient to show that the gun could "readily be rendered operable." See State v. McLearran (Apr. 20, 1983), Montgomery App. No. 7659.
 II {¶ 11} For his second assignment of error, Stubblefield complains that the court erred by denying his request to dismiss counsel.
 {¶ 12} An indigent criminal defendant's Sixth Amendment right to competent counsel does not extend to a right to counsel of the defendant's choosing. Thurston v. Maxwell (1965), 3 Ohio St.2d 92. When a defendant requests the appointment of new counsel, the court must inquire into the basis for the request and determine whether the accused has shown a breakdown in the attorney-client relationship which warrants the substitution. State v. Coleman (1988), 37 Ohio St.3d 286, 292. This inquiry need not be lengthy and may only address specific issues raised by the defendant. State v. Johnson, 112 Ohio St.3d 210, 218,2006-Ohio-6404. Issues which show good cause for substitution can include "a conflict of interest, a complete breakdown in the *Page 8 
attorney-client relationship or an irreconcilable conflict which leads to an apparently unjust result." State v. Blankenship (1995),102 Ohio App.3d 534, 558. Substitution of counsel is within the discretion of the trial court. State v. Jones, 91 Ohio St.3d 335, 343-344, 2001-Ohio-573.
 {¶ 13} Following failed discussions about a possible plea agreement, the court prepared to commence with jury selection. Stubblefield told the court that he had sent the court a motion to "dismiss" counsel to chambers. The court told Stubblefield that it did not receive the motion, and that "[i]t's not very likely that I would [dismiss counsel]." The court explained that the dismissal of court-appointed attorneys would create "a bad trend" because it could be viewed by other defendants as a means of delaying trial. When allowed to state a basis for his request, Stubblefield cited to (1) his attorney's former employment as an assistant prosecuting attorney, (2) counsel's failure to make note of several points that Stubblefield believed were key to his defense, and (3) his inability to contact counsel. The court allowed defense counsel to speak and counsel disagreed with Stubblefield's reasons for seeking substitution of counsel. Counsel said that he had several meetings with Stubblefield and considered Stubblefield's demands "pretty high, as far as how many hours he went to see counsel on this case." Counsel told the court that he had focused on obtaining a plea agreement in light of the nature of the charged offenses and Stubblefield's *Page 9 
prior conviction, but that he was prepared to go forward with trial. The court denied Stubblefield's motion, finding that counsel was more than adequate and prepared for trial, and that Stubblefield had not given "enough information that would cause me to have [counsel] removed from your case."
 {¶ 14} We conclude that the court did not abuse its discretion by denying Stubblefield's request for substitution of counsel. Stubblefield simply disagreed with counsel's tactics and trial strategy, and that is not a sufficient basis for substitution. See State v. Ketterer,111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 149. The court noted that defense counsel was very experienced and prepared for trial, and the case itself was not so complex as to require more frequent meetings between defense counsel and Stubblefield. Given the lack of specificity provided by Stubblefield as a basis for substitution, we do not find that the court acted in an arbitrary and capricious manner by denying the motion for substitution. There was simply no evidence that the attorney-client relationship had completely broken down. The second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. *Page 10 
The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANN DYKE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR *Page 1