[Cite as *State v. Bolton*, 2012-Ohio-169.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96385**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TREVOR BOLTON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-537424

**BEFORE:** Celebrezze, J., Stewart, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:**    January 19, 2012

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio   44113-2098


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Carrie Heindrichs
        Mahmoud Awadallah
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Appellant, Trevor Bolton, appeals from his convictions for kidnapping, rape, gross sexual imposition, and having a weapon while under disability.   After a thorough review of the record and relevant case law, we affirm in part and reverse and remand in part.

{¶ 2} On May 19, 2010, appellant was indicted in a seven-count indictment that charged him with aggravated burglary in violation of R.C. 2911.11(A)(2), with one- and three-year firearm specifications; kidnapping in violation of R.C. 2905.01(A)(4), with one- and three-year firearm specifications; three counts of rape in violation of R.C. 2907.02(A)(2), with one- and three-year firearm specifications; gross sexual imposition in

violation of R.C. 2907.05(A)(1); and having a weapon while under disability in violation of R.C. 2923.13(A)(3).

{¶ 3} On November 30, 2010, appellant's jury trial commenced. At trial, the victim, K.K.,[1] testified that in 2002 and 2003, she lived in a two-story house in East Cleveland, Ohio. K.K. testified that on May 7, 2003, she was in her upstairs bedroom when she heard noises coming from downstairs. When she went into the hallway, she saw a man coming up the stairs. She testified that she did not see the man clearly, but heard him say, "put your head down, turn around." At that point, the man grabbed her and pushed her into her bedroom. K.K. testified that the man pointed a firearm at her while he pulled off her pants. Subsequently, the man penetrated her with his mouth, fingers, and penis. K.K. testified that her eyes were closed when the man was on top of her, however, when she opened her eyes, she saw the firearm laying near her face on the bed. K.K. testified that she immediately contacted the police once the man left her house. When the officers arrived at her residence, K.K. informed them that she had been raped, and she was taken to the hospital for examination.

{¶ 4} Dr. Daniel Dickriede testified that he was the emergency room doctor at South Pointe Hospital when K.K. arrived. Dr. Dickriede testified

---

[1] The victim is referred to herein by her initials in accordance with this court's established policy.

that K.K. stated that the individual who raped her was armed and pressed the gun to the back of her head. Dr. Dickriede testified that the completed rape kit and K.K.'s clothing were given to the Cleveland Police Department ("CPD"). He testified that the physical examination of K.K. showed that her memory was intact, although she was suffering from depression.

{¶ 5} Detective Alan Strickler of the CPD, Sex Crimes and Child Abuse Unit, testified that he met with K.K. on May 21, 2003 and took her written statement. Det. Strickler testified that he lost contact with K.K. when she moved out of her Cleveland home. The case became a cold case until 2007, when Det. Strickler learned that there was a DNA match found in a DNA profile database. The database identified appellant as a DNA match.

{¶ 6} Det. Strickler testified that he attempted to contact K.K. immediately, but was unable to locate her until 2010. He testified that once he was able to locate K.K., she came to his office and was shown a photo lineup. K.K. indicated that No. 6 in the photo array looked familiar, but she was unable to say if he was the person who raped her. At that point, Det. Strickler informed K.K. that "Trevor Bolton is No. 6. Any reaction?" Det. Strickler testified that K.K. informed him that "she knew him from somewhere." Upon showing K.K. a different photograph, K.K. stated, "I definitely know him." Subsequently, Det. Strickler made contact with appellant and obtained his written consent to take a buccal swab.

**{¶ 7}** Catherine Dennisoff of the CPD Forensic Lab testified that on May 19, 2010, Det. Strickler brought the buccal swab to the forensic lab in a property envelope. The property envelope was sealed and delivered to the Ohio Bureau of Criminal Identification and Investigation unit ("BCI") on May 26, 2010. Dennisoff explained that she complied with CPD forensic lab polices and procedures for handling evidence.

**{¶ 8}** Dale Laux, a laboratory technician employed by BCI, testified that on June 17, 2003, the CPD submitted six items for forensic analysis in this case, including K.K.'s rape kit, clothing, and bedding. Laux testified that he tested the items in compliance with the BCI standard procedures. Laux testified that he discovered body fluids and semen stains on the underwear submitted by the CPD and preserved the evidence for subsequent DNA analysis.

**{¶ 9}** Melissa Zielaskiewicz, a forensic scientist employed by BCI, testified that the uniqueness of one's DNA makes it reliable evidence to identify a party associated with a crime. She testified that BCI took cautionary measures to ensure the integrity of its testing. Zielaskiewicz testified that she received evidence relating to K.K.'s case on June 17, 2003. Zielaskiewicz testified that she was advised in 2007 that there was a hit on the department's DNA database informing that an individual had been potentially identified as the source of the DNA. Zielaskiewicz testified that

the computer match of the DNA was made to appellant. After the computer match, a second report was generated on June 24, 2010, using the buccal swabs taken from appellant. Zielaskiewicz testified that after conducting the DNA analysis, she concluded that appellant could not be excluded as a source of the semen found on K.K.'s underwear. Zielaskiewicz further stated that "the chance of finding another random person in the population that would have the same DNA profile" was "1 in 1,481,000,000,000."

{¶ 10} At the conclusion of trial, the jury found appellant guilty of kidnapping, gross sexual imposition, and one count of rape. Additionally, the trial court found appellant guilty of having a weapon while under disability. Appellant, however, was found not guilty by the jury on the aggravated robbery count, two counts of rape, and the firearm specifications.

{¶ 11} On January 6, 2011, the trial court sentenced appellant to ten years on the kidnapping charge and ten years on the rape charge, to run concurrently to each other. Additionally, the trial court sentenced appellant to 18 months on the gross sexual imposition charge and five years on the charge of having a weapon while under disability, to run consecutively to each other and consecutively to the rape and kidnapping charges. Accordingly, appellant was ordered to serve an aggregate term of 16 and one-half years.

{¶ 12} Appellant appeals, raising 14 assignments of error for review.[2]

---

[2] Appellant's assignments of error are contained in the appendix to this

## Law and Analysis

## I.  Motion to Suppress

{¶ 13} In his first assignment of error, appellant argues that he was denied due process of law when the trial court denied his motion to suppress evidence.  Appellate review of a suppression decision presents a mixed question of law and fact.  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100.  On factual matters, the trial court occupies the best position to evaluate the credibility of witnesses and weigh the evidence.  *Id.* at ¶ 100, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972  (1992).  Thus, factual findings are accorded great deference.  *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  The trial court's legal conclusions are reviewed de novo.  *Id.*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 14} Initially, appellant contends that the DNA collection authorized by R.C. 2901.07 was unconstitutional.  R.C. 2901.07 requires DNA testing of certain offenders who have been incarcerated, without regard to their consent or the existence of any reason to believe that they have committed a crime other than the offense for which they have been incarcerated.  *See State v. Cremeans*, 160 Ohio App.3d 1, 2005-Ohio-928, 825 N.E.2d 1124 (2d Dist.).  In this matter, a DNA sample was taken from appellant without his consent

opinion.

while he was incarcerated on unrelated charges. The sample was stored in a DNA database and subsequently linked appellant to the rape of K.K.

{¶ 15} As this court stated in *State v. Gaines*, 8th Dist. No. 91179, 2009-Ohio-622, 2009 WL 344990, ¶ 58, "All fifty states have enacted DNA database statutes and courts have almost uniformly held that they do not violate the Fourth Amendment. The United States Supreme Court has characterized the drawing of blood as minimally intrusive." *Id.* "Blood tests do not constitute an unduly extensive imposition on an individual's bodily integrity." *Winston v. Lee*, 470 U.S. 753, 762, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985).

{¶ 16} Furthermore, prisoners and probationers have diminished expectations of privacy. *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *Hudson v. Palmer*, 468 U.S. 517, 524-528, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *In re Nicholson*, 132 Ohio App.3d 303, 724 N.E.2d 1217 (8th Dist. 1999); *Pollock v. Brigano*, 130 Ohio App.3d 505, 511, 720 N.E.2d 571 (12th Dist. 1998). A convicted felon's interest in the identifying information contained in his or her DNA is particularly weak when compared with those of other individuals. In the context of law enforcement, the taking of a DNA sample is akin to the taking of a fingerprint and does not unduly infringe on an offender's privacy interests. *Nicholson, supra*; *see also Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d

676 (1969). Accordingly, the DNA sample taken from appellant while he was in prison on an unrelated charge was not unconstitutional pursuant to R.C. 2901.07.

{¶ 17} Next, appellant argues that the DNA sample taken by Det. Strickler after he was arrested for K.K.'s rape was a violation of his Fourth Amendment right against search and seizure. The Fourth Amendment to the United States Constitution requires a police officer to first obtain a warrant based on probable cause and approved by a judge or magistrate before conducting a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

{¶ 18} Section 14, Article I of the Ohio Constitution provides protections that are coextensive with those provided by the Fourth Amendment to the United States Constitution. *State v. Robinette*, 80 Ohio St.3d 234, 245, 1997-Ohio-343, 685 N.E.2d 762. Searches and seizures for evidence conducted outside the judicial process "are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Valid exceptions to the warrant requirement include search of arrestee's immediate area incident to arrest; inventory search; voluntary consent; investigatory stop with protective search incident to arrest or incident to investigatory stop; hot pursuit; exigent

circumstances; and plain view. *Id.* The state contends that the search of appellant was constitutional based on appellant's written consent. We agree.

{¶ 19} "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and 'voluntariness is a question of fact to be determined from all the circumstances' [*Schneckloth* at 248-249]." *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Further, the state must prove by clear and convincing evidence that the consent was freely and voluntarily given. *State v. Jackson*, 110 Ohio App.3d 137, 142, 673 N.E.2d 685 (6th Dist. 1996). Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cincinnati Bar Assn. v. Massengale*, 58 Ohio St.3d 121, 122, 568 N.E.2d 1222 (1991), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. While clear and convincing evidence is "more than a mere 'preponderance of the evidence,'" it does not rise to the level of "evidence 'beyond a reasonable doubt.'" *Id.*

{¶ 20} In the case sub judice, the record reflects that appellant was arrested on May 1, 2010, on a valid arrest warrant. On May 12, 2010, Det. Strickler went to the prison to speak with appellant. At that time, appellant consented to the taking of the buccal swab and signed a written waiver. The consent form advised appellant that he had the right to require that the

police obtain a search warrant and that he had the right to refuse the search. Thus, we find competent and credible evidence in the record to sustain the trial court's conclusion that appellant's consent to the collection of biological samples was voluntary.

{¶ 21} Finally, appellant argues that the buccal swab was taken in violation of his Fifth Amendment right to counsel. Appellant contends that the search was conducted after he invoked his right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶ 22} In *Miranda*, the Supreme Court held that, in order to protect a defendant's right under the Fifth Amendment against compelled self-incrimination, before police initiate custodial interrogation, they must advise a defendant that, in addition to other rights, he has the right to remain silent and the right to counsel. *Id*. at 1624-1627. "The right to counsel established in *Miranda* was one of a 'series of recommended "procedural safeguards"' * * * [that] were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected." *Davis v. United States*, 512 U.S. 452, 457, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The court added another layer to that protection in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and its progeny, by holding that once a

defendant invokes his right to an attorney under *Miranda*, the defendant must reinitiate contact in order for the authorities to resume interrogation.

{¶ 23} Appellant contends that Det. Strickler's request for consent to the search was an interrogation within the meaning of the Fifth Amendment. However, even after a suspect has invoked his right to counsel after the *Miranda* warnings, the police are not prohibited from asking a suspect to consent to a search. *See, e.g., U.S. v. LaGrone*, 43 F.3d 332 (7th Cir.1994) (request for consent to search is not interrogation under *Miranda* ). Accordingly, consent given after the invocation of *Miranda* rights is valid as long as it is voluntary. Although physical evidence derived from statements made in violation of *Miranda* is subject to suppression, *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, physical evidence obtained pursuant to the voluntary consent of the defendant is not. As previously stated, appellant voluntarily agreed to sign the consent form and allowed the police to obtain a buccal swab. Thus, his Fifth Amendment right to counsel was not violated because the request for consent to search was not an interrogation under *Miranda*. *See State v. Carver*, 2d Dist. No. 21328, 2008-Ohio-4631, 2008 WL 4183982.

{¶ 24} Appellant's first assignment of error is overruled.

## II.   Motion to Dismiss

{¶ 25} In his second assignment of error, appellant argues that he was denied due process of law when the trial court denied his motion to dismiss based on the unreasonable delay in commencing a prosecution.

{¶ 26} Courts reviewing a decision on a motion to dismiss for preindictment delay accord deference to the lower court's findings of fact, but engage in a de novo review of the lower court's application of the law to the facts. *State v. Cochenour*, 4th Dist. No. 98CA2440, 1999 WL 152127 (Mar. 8, 1999), citing *State v. Metz*, 4th Dist. No. 96CA48, 1998 WL 199944 (Apr. 21, 1998).

{¶ 27} As recognized by the Ohio Supreme Court: "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under * * * the Fifth and Fourteenth Amendments to the United States Constitution." *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus; *see also United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). If defendant establishes actual prejudice, the burden shifts to the state to establish justifiable delay. *Luck* at 153.

{¶ 28} To succeed in having a court dismiss an indictment as a result of preindictment delay, the defendant must demonstrate that the delay caused actual prejudice to his or her defense. *Id*. at 157-58. Once the defendant

makes this showing of actual prejudice, the burden then shifts to the state to prove that the reasons for the delay were justifiable. *Id*. at 158. Thus, "proof of actual prejudice, alone, will not automatically validate a due process claim," rather, "the prejudice suffered by the defendant must be viewed in light of the state's reason for the delay." *Id*.

{¶ 29} "To prove actual prejudice, a defendant must show, by concrete proof, the exculpatory value of any alleged missing evidence." *State v. Ennist*, 8th Dist. No. 90076, 2008-Ohio-5100, 2008 WL 4439105, ¶ 27, citing *State v. Gulley*, 12th Dist. No. CA99-02-004, 1999 WL 1238427 (Dec. 20, 1999); *see also United States v. Doerr*, 886 F.2d 944, 964 (7th Cir.1989). A defendant must specifically show how lost witnesses and physical evidence would have proven the defendant's asserted defense. *Id*. Mere speculation, however, is insufficient to demonstrate prejudice. *Id*.

{¶ 30} Here, appellant has failed to demonstrate that he was actually prejudiced by the preindictment delay. Appellant does not argue that the delay hindered his ability to defend himself at trial. Rather, he contends that he could have already served a substantial portion of his sentence had he been indicted and convicted earlier. Such a claim of prejudice fails to satisfy appellant's burden. *See State v. Davis*, 7th Dist. No. 05 MA 235, 2007-Ohio-7216, 2007 WL 4696960, ¶ 17 ("without proof of prejudice, meaning something which adversely affects [a defendant's] ability to defend

himself at trial, there is no due process violation for preindictment delay in prosecution").

**{¶ 31}** Appellant's second assignment of error is overruled.

### III.   Expert Witness

**{¶ 32}** In his third assignment of error, appellant argues that he was denied due process of law when the trial court refused to appropriate funds for an expert witness to evaluate the DNA evidence on his behalf.

**{¶ 33}** Both the United States Supreme Court and the Ohio Supreme Court have consistently held that an indigent criminal defendant is entitled to an expert witness at the state's expense under certain conditions.   *State v. Mason*, 82 Ohio St.3d 144, 149, 694 N.E.2d 932 (1998).   "As a matter of due process, indigent defendants are entitled to receive the 'raw materials' and the 'basic tools of an adequate defense,' which may include provision of expert * * * assistance."   *Id.*, quoting *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

**{¶ 34}** The decision to appoint an expert is left to the trial court's broad discretion, and its decision will not be reversed absent an abuse of discretion. *State v. Wells*, 7th Dist. No. 98-JE-3, 2000 WL 309401 (Mar. 22, 2000).   An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably.   *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶ 35}** It is well settled that in cases where an indigent defendant requests state-funded expert assistance, the indigent defendant has the burden of establishing the reasonableness of the request. *State v. Scott*, 41 Ohio App.3d 313, 315, 535 N.E.2d 379 (8th Dist. 1987). At a minimum, the indigent defendant must present the trial court with sufficient facts upon which the court can base a decision. *Id.*, citing *Ake*, *supra*, at 83; *State v. Ulis*, 6th Dist. No. L-93-247, 1994 WL 385196 (July 22, 1994).

**{¶ 36}** In the case sub judice, appellant's counsel argued that expert review and interpretation of the DNA testing report from the BCI "may be useful in his defense." Generally, an undeveloped assertion that expert assistance would be useful to the defense is inadequate. *Caldwell v. Mississippi*, 472 U.S. 320, 323-324, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), fn. 1. Here, appellant has failed to assert a specific reason for his request for expert assistance. "Without a more substantial showing that the request for a DNA expert was reasonable, this court cannot now say that the trial court erred in denying appellant's request." *State v. Kent*, 8th Dist. No. 72435, 1998 WL 323558 (June 18, 1998), citing *Ake*, *supra*, at 83.

**{¶ 37}** Appellant's third assignment of error is overruled.

## IV. Right of Confrontation

**{¶ 38}** In his fourth assignment of error, appellant argues that he was denied his constitutional right of confrontation and cross-examination.

{¶ 39} On cross-examination, defense counsel questioned K.K. about her boyfriend at the time of the incident. Specifically, counsel inquired into her boyfriend's whereabouts and acquaintances at the time of K.K.'s rape. The state objected to the line of questioning, and the trial court sustained the objection on relevancy grounds. Appellant asserts that the trial court prevented him from challenging K.K.'s bias and prejudice "because it could be assumed that if her boyfriend was in jail she may have thought that defendant was responsible for the boyfriend being in jail or there was some connection between defendant and her boyfriend." We disagree with appellant's assertion.

{¶ 40} The constitutional right of cross-examination includes the right to impeach a witness's credibility. *State v. Green*, 66 Ohio St.3d 141, 1993-Ohio-26, 609 N.E.2d 1253; *State v. Brewer*, 2d Dist. No. 13866, 1994 WL 461781 (Aug. 24, 1994); Evid.R. 611(B). Unlike Federal Crim.R. 611, which generally limits cross-examination to matters raised during direct, Ohio Crim.R. 611(B) permits cross-examination on all relevant issues and matters relating to credibility. Weissenberger, *Ohio Evidence 2005 Courtroom Manual*, at 245-246. Possible bias, prejudice, pecuniary interest in the litigation or motive to misrepresent facts, are matters that may affect credibility. Evid.R. 616(A); *State v. Ferguson*, 5 Ohio St.3d 160, 450 N.E.2d 265 (1983). The denial of full and effective cross-examination of any witness

who identifies a defendant as the perpetrator of the offense is the denial of the fundamental constitutional right of confrontation essential to a fair trial. *State v. Hannah*, 54 Ohio St.2d 84, 374 N.E.2d 1359 (1978); *Brewer, supra.*

{¶ 41} In *State v. Foust*, 2d Dist. No. Civ.A. 20470, 2005-Ohio-440, 2005 WL 281165, ¶ 13-14, the court held:

> On the other hand, trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, the witness's safety, or repetitive, marginally relevant interrogation. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674. It is within the trial court's broad discretion to determine whether testimony is relevant, and to balance its potential probative value against the danger of unfair prejudice. *In re Fugate* ([Sept. 22,] 2000), Darke App. No. 1512. We will not interfere with the trial court's decision in those matters absent an abuse of discretion. Id. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. Id.

{¶ 42} In this matter, the determination of whether K.K.'s boyfriend was in prison at the time she was raped was irrelevant to the facts at issue. Any argument to the contrary would require highly objectionable speculation. Furthermore, K.K. testified on cross-examination that she did not know appellant prior to the date of the incident, and there was no evidence presented that appellant shared a relationship with K.K.'s boyfriend. The mere fact that K.K.'s testimony did not align with appellant's theory of defense does not equate to a violation of the confrontation clause.

{¶ 43} Appellant's fourth assignment of error is overruled.

### V. Jury Instruction — Lesser Included Offense

{¶ 44} In his fifth assignment of error, appellant argues that he was denied due process of law and his right to present a defense when the trial court refused to instruct the jury on the lesser included offenses of rape and kidnapping.

{¶ 45} An offense may be a lesser included offense of another when (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph three of the syllabus. A charge on a "lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus; *State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992). Conversely, if the jury could not reasonably find against the state on any element of the crime, then a charge on a lesser included offense is not only not required, but is also improper. *Thomas*, *supra*.

{¶ 46} Initially, appellant complains that the trial court erred in refusing to instruct on sexual battery as a lesser included offense of rape. The offense of rape under R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." As used in R.C. 2907.02, "sexual conduct" means "vaginal intercourse between a male and a female; * * * [and p]enetration, however slight, is sufficient to complete vaginal * * * intercourse." R.C. 2907.01(A). The offense of sexual battery under R.C. 2907.03 provides that "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: (1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution."

{¶ 47} The Ohio Supreme Court has previously determined that sexual battery, as statutorily defined, is a lesser included offense of rape. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144; *State v. Chaney*, 3d Dist. No. 13-07-30, 2008-Ohio-3507, 2008 WL 2718509. Accordingly, a trial court's failure to instruct the jury on sexual battery as a lesser included offense of rape will be error only if the jury could have reasonably found that the defendant compelled the victim to submit to sexual conduct by coercion, but not by force or threat of force. *See Chaney* at ¶ 44.

{¶ 48} In the case before us, K.K. testified that appellant compelled her to engage in sexual conduct by force and threat of force. Throughout the trial, neither party presented any evidence to suggest that appellant compelled K.K. to submit to sexual conduct by coercion. Consequently, the trial court did not err in declining to instruct the jury on sexual battery as a lesser included offense of rape.

{¶ 49} Appellant next complains that the trial court erred in refusing to instruct on abduction as a lesser included offense of kidnapping. Kidnapping is defined in R.C. 2905.01 as follows:

> (A) No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (2) To facilitate the commission of any felony or flight thereafter;
>
> (3) To terrorize, or to inflict serious physical harm on the victim or another[.]
>
> Abduction is defined in R.C. 2905.02 as:
>
> (A) No person, without privilege to do so, shall knowingly do any of the following:
>
> (1) By force or threat, remove another from the place where the other person is found;
>
> (2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]

**{¶ 50}** This court has held that abduction is a lesser included offense of kidnapping. *State v. Simmons*, 8th Dist. No. 96208, 2011-Ohio-6074, 2011 WL 5869794, ¶ 42. Here, we are unable to conclude that the trial court erred in failing to give an instruction on abduction where the record is devoid of any evidence that would have caused the jury to find appellant guilty of abduction but not guilty of kidnapping. The evidence demonstrated that appellant placed a gun to K.K.'s head and moved her into her bedroom, where he knowingly restrained her liberty, against her will, with force and threat of force. Consequently, appellant was not entitled to an instruction on the lesser included offense of abduction.

**{¶ 51}** Appellant's fifth assignment of error is without merit.

## VI. Jury Instruction --- Kidnapping

**{¶ 52}** In his sixth assignment of error, appellant argues that he was denied due process of law when the trial court failed to instruct, with reference to the kidnapping count, that the jury make a determination as to whether the victim was released in a safe place unharmed.

**{¶ 53}** "An appellate court is to review a trial court's decision regarding a jury instruction to determine whether the trial court abused its discretion." *State v. Mitchell*, 11th Dist. No. 2001-L-042, 2003-Ohio-190, 2003 WL 138475, at ¶ 10, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

**{¶ 54}** The applicable statute, which has since been amended, stated, "[e]xcept as otherwise provided in this division or division (C)(2) or (3) of this section, if the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree." Former R.C. 2905.01(C).

**{¶ 55}** Whether a kidnapper releases his victim unharmed in a safe place "is not an element of the offense; rather, the accused must plead and prove it in the fashion of an affirmative defense." *State v. Sanders*, 92 Ohio St.3d 245, 265, 2001-Ohio-189, 750 N.E.2d 90; *State v. Cornute*, 64 Ohio App.2d 199, 412 N.E.2d 416 (10th Dist. 1979) ("The provision in R.C. 2905.01(C), reducing kidnapping to a felony of the second degree '[i]f the offender releases the victim in a safe place unharmed' is a mitigating circumstance, rather than an element of the crime of kidnapping. It is in the nature of an affirmative defense and is to be treated as such").

**{¶ 56}** "The court has no duty to give jury instructions that are neither supported by the facts nor that assist the jury." *Ogletree*, at ¶14, citing *State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981), at the syllabus. In this case, it is evident that appellant failed to provide any evidence that K.K. was released unharmed. Instead, ample evidence was provided by the state that K.K. was harmed — she was raped by appellant prior to being released. As stated in *State v. Arias*, 9th Dist. No. 04CA008428, 2004-Ohio-4443, 2004 WL 1882631, ¶ 38, "it is difficult indeed to imagine that one may engage in sexual

activity with another against their will and still argue that such a person is left 'unharmed.'" K.K. was not released unharmed, and therefore, the court did not act improperly in failing to read an instruction regarding this issue to the jury. See *State v. Turner*, 11th Dist. No. 2010-A-0060, 2011-Ohio-5098, 2011 WL 4552987.

{¶ 57} Appellant's sixth assignment of error is overruled.

## VII. Cumulative Error

{¶ 58} In his seventh assignment of error, appellant argues that he was denied a fair trial by reason of cumulative error committed during the course of the trial.

{¶ 59} In *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), the Ohio Supreme Court recognized the doctrine of cumulative error. Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal. *State v. Baker*, 8th Dist. No. 95300, 2011-Ohio-2784, 2011 WL 2409203, at ¶ 59, citing *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 623 (1995).

{¶ 60} "In order to find 'cumulative error' present, we first must find that multiple errors were committed at trial. We then must find a reasonable probability that the outcome of the trial would have been different but for the

combination of the separately harmless errors." (Citations omitted.) *State v. Djuric*, 8th Dist. No. 87745, 2007-Ohio-413, 2007 WL 274373, at ¶ 52.

{¶ 61} To affirm in spite of multiple errors, we would have to determine that the cumulative effect of the errors is harmless beyond a reasonable doubt. *State v. Williams*, 8th Dist. No. 94261, 2011-Ohio-591, 2011 WL 486487, at ¶ 25, citing *DeMarco* at 195 (the errors can be considered harmless if there is overwhelming evidence of guilt or other indicia that the errors did not contribute to the conviction).

**1. Declaring witnesses to be experts in the presence of the jury.**

{¶ 62} Appellant argues that the trial court erred in declaring forensic scientist Melissa Zielaskiewicz to be an expert in the presence of the jury. In our judgment, the trial court properly permitted Zielaskiewicz to testify and render her opinion in the capacity of an expert. Although we agree with appellant's position that Zielaskiewicz should have been qualified as an expert in DNA outside the presence of the jury, *United States v. Johnson*, 488 F.3d 690 (6th Cir.2007), we find the error was harmless in this case, given the correctness of permitting Zielaskiewicz to testify as an expert. *State v. Tilley*, 2d Dist. No. 19198, 2002-Ohio-6776, 2002 WL 31761446, ¶ 24.

## 2. Use of statistical evidence not prepared by the witness.

**{¶ 63}** Appellant argues that the trial court improperly allowed Zielaskiewicz to testify about statistical evidence provided by a national database developed by the Federal Bureau of Investigation ("FBI"). Appellant claims that he was denied any opportunity to cross-examine the FBI's random match probability estimates because Zielaskiewicz did not prepare the database and had no personal knowledge of the methods and procedures the FBI used to compute the statistical estimates or the data upon which the calculations were based. Using the FBI database, Zielaskiewicz estimated that the mathematical chance that appellant was not the source of the recovered DNA was 1 in 1,481,000,000,000.

**{¶ 64}** Many Ohio jurisdictions, including this one, have allowed expert opinion testimony under Evid.R. 703, even though the expert's opinion was based in part on statistics published by other sources. *State v. Ervin*, 8th Dist. No. 80473, 2002-Ohio-4093, 2002 WL 1824977; *State v. Flowers*, 10th Dist. No. 99AP-530, 2000 WL 552197 (May 4, 2000); *State v. Powell*, 2d Dist. No. 18095, 2000 WL 1838716 (Dec. 15, 2000); *State v. Stokes*, 8th Dist. No. 71654, 1997 WL 764815 (Dec. 11, 1997); *State v. Drain*, 10th Dist. No. 95APA03-351, 1995 WL 765169 (Dec. 29, 1995). Furthermore, courts have addressed and rejected appellant's argument raised herein, holding that the statistical DNA evidence derived from the FBI database is not "testimonial"

under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Powell, supra*; *State v. Bruce*, 5th Dist. No. 2006-CA-45, 2008-Ohio-5709, 2008 WL 4801648; *State v. Breeze*, 10th Dist. No. 92AP-258, 1992 WL 356269 (Nov. 24, 1992). Accordingly, we find no error in the trial court's acceptance of Zielaskiewicz's expert testimony and reliance on the FBI database.

**3. Unsupported claims by prosecutor concerning DNA evidence.**

**{¶ 65}** Appellant contends that the prosecutor's statement in closing arguments that "DNA evidence has exonerated people" subjected him to an unfair trial. Additionally, appellant contends that the state denigrated defense counsel during closing arguments.

**{¶ 66}** Courts afford prosecutors wide latitude in making closing arguments. *State v. Benge*, 75 Ohio St.3d 136, 141, 1996-Ohio-227, 661 N.E.2d 1019. Moreover, "it is well settled that a party cannot complain of [an] opponent's argument to the jury, where it amounts only to a reply in kind to matters argued by [a] complaining party." *State v. Hopkins*, 10th Dist. No. 05AP-338, 2006-Ohio-232, 2006 WL 163995, ¶ 31, quoting *State v. Roland*, 8th Dist. No. 38393, 1979 WL 209968 (Mar. 15, 1979).

**{¶ 67}** Upon review of the record, we find that the prosecutor's statements were made in response to appellant's unfounded comments during closing arguments that there was only a 60 percent probability that appellant

was a match to the DNA test. Furthermore, we find that the prosecutor's statement that defense counsel "pulled the information out of his hat" did not denigrate defense counsel. While the comments may have been improper, they were not prejudicial. *State v. Bauldwin*, 8th Dist. No. 94876, 2011-Ohio-1066, 2011 WL 827414. Therefore, we find no error in the state's closing argument.

### 4. Improper testimony from Det. Alan Strickler.

{¶ 68} Finally, appellant contends that the testimony of Det. Strickler was improper because it relied primarily on the police report. However, appellant has failed to cite any case law or rules of evidence to support his position. Additionally, the record reflects that Det. Strickler actively participated in the investigation of this matter, and his testimony at trial was limited to his personal observations. Accordingly, we find no error.

{¶ 69} Because appellant has failed to establish the existence of multiple errors, his seventh assignment of error is overruled.

### VIII. Closing Statement

{¶ 70} In his eighth assignment of error, appellant argues that he was denied due process of law and assistance of counsel when the trial court rendered its verdict without allowing defendant or his counsel to make a closing statement in regard to the charges tried to the bench.

**{¶ 71}** In *Jackson v. Jackson*, 8th Dist. Nos. 64284 and 64873, 1993 WL 526704 (Dec. 16, 1993), this court stated:

> While a trial judge may not refuse to permit final argument in a jury or non-jury case, without violating the defendant's right to assistance of counsel, error in the matter of opening and closing of argument must appear affirmatively from the record in order to be reviewed. The record does not indicate that appellant requested a closing argument which was denied by the trial court. (Citations omitted.) *Id.*

Similarly, in this matter, the record is devoid of any attempt by the trial court to deny appellant's counsel the opportunity to present a closing argument.

**{¶ 72}** Appellant's eighth assignment of error is not reviewable and is, therefore, overruled.

## IX.  Consistency Between Verdicts

**{¶ 73}** In his ninth assignment of error, appellant argues that he was denied due process of law when the trial court found him guilty of having a weapon while under disability when the jury previously found that he did not possess a firearm.

**{¶ 74}** However, "in criminal cases, consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts, and acquitted on others, and the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal." *State v. Sailor*, 8th Dist. No. 83552, 2004-Ohio-5207, 2004 WL 2340113, ¶ 88, citing *State v. Woodson*, 24 Ohio App.3d 143, 493 N.E.2d 1018

(10th Dist. 1985). Accordingly, any inconsistency between verdicts on a count in an indictment charging defendant with having a weapon while under disability and a firearm specification count will not be grounds for reversal. *Id.*

{¶ 75} Appellant's ninth assignment of error is overruled.

## X. Sentencing

{¶ 76} In his tenth assignment of error, appellant argues that he was denied due process of law when he was sentenced on one count of rape after the jury found him not guilty on two counts of rape. Appellant specifically contends that the indictment violated his constitutional right to notice by charging him with three identical counts of rape without differentiating the counts in any way.

{¶ 77} Appellant did not object to the form of the indictment before trial, as required by Crim.R. 12(C)(2), nor did he move to dismiss the indictment or request a more specific bill of particulars. He has therefore waived all but plain error. *State v. Bogan*, 8th Dist. No. 84468, 2005-Ohio-3412, 2005 WL 1541014. To prevail on a claim of plain error, appellant must demonstrate that, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

**{¶ 78}** The United States Supreme Court described the criteria by which the sufficiency of an indictment is to be evaluated:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet," and, secondly, "in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell v. U.S.*, 369 U.S. 749, 764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), quoting *Cochran v. United States*, 157 U.S. 286, 290, 15 S.Ct. 628, 39 L.Ed. 704 (1895).

**{¶ 79}** Our review of the indictment fails to show that plain error occurred. The indictment recited the language for the definition of rape as defined in R.C. 2907.02(A)(2); therefore, the indictment properly apprised appellant of the charged offenses. Moreover, the state presented sufficient factual evidence to differentiate the three counts of rape. *State v. Wilson*, 8th Dist. No. 93772, 2010-Ohio-6015, 2010 WL 5072012, ¶ 18, citing *State v. Salahuddin*, 8th Dist. No. 90874, 2009-Ohio-466, 2009 WL 270498; *State v. Cunningham*, 8th Dist. No. 89043, 2008-Ohio-803, 2008 WL 519324.

**{¶ 80}** At trial, K.K. testified that she was orally penetrated, digitally penetrated, and vaginally penetrated. *See also State v. Hilton*, 8th Dist. No. 89220, 2008-Ohio-3010, 2008 WL 2477431. Such testimony cured any due process problems associated with appellant's indictment. *See Cunningham* at ¶ 39 (finding the state cured any due process problems in the indictment before and during trial by delineating the factual bases for the separate

counts); *State v. Rice*, 8th Dist. No. 82547, 2005-Ohio-3393, 2005 WL 1541007 ("the cure for such identical indictments would be for the prosecution to delineate the factual bases for each count either before or during the trial, so that the judge, defendant and the jury could be able to tell one count from another"); *State v. Hardy*, 8th Dist. No. 86722, 2007-Ohio-1159, 2007 WL 766128 (stating same).

{¶ 81} Appellant's tenth assignment of error is overruled.

## XI. Sufficiency of the Evidence

{¶ 82} In his eleventh assignment of error, appellant argues that the state failed to present sufficient evidence to sustain his convictions, and therefore, the trial court should have granted his motion for acquittal.

{¶ 83} Under Crim.R. 29(A), a court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.* The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 84} Initially, appellant challenges the sufficiency of the evidence supporting his conviction for having a weapon while under disability. Appellant was found guilty of violating R.C. 2923.13(A)(3). Under that subsection, "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse[.]"

{¶ 85} Appellant specifically argues that the evidence presented at trial was insufficient to support a finding that the "gun" identified by K.K. was a "firearm" as defined by R.C. 2923.11. The definition of "firearm," as used in R.C. 2923.13, requires the firearm to be operable or readily capable of being rendered operable. *See* R.C. 2923.11(B)(1); *State v. Stubblefield*, 8th Dist. No. 90687, 2008-Ohio-5348, 2008 WL 4599656, ¶ 8.

{¶ 86} Concerning operability, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). The Ohio Supreme Court has held that "proof of operability can be established beyond a reasonable doubt by testimony of lay witnesses

who were in a position to observe the instrument and the circumstances surrounding the crime." *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990), syllabus. Moreover, whether a firearm was operable or capable of being readily rendered operable at the time of the offense is determined within the context of "all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." *Thompkins, supra*, at paragraph one of the syllabus; *State v. Crawford*, 8th Dist. No. 82833, 2004-Ohio-500, 2004 WL 229532.

{¶ 87} In this case, K.K. testified that appellant forced her into her bedroom and placed a gun to the back of her head while he sexually assaulted her. Clearly, a reasonable juror could construe the action of placing a gun to K.K.'s head as an implicit threat to discharge the weapon if appellant's demands were not met. Accordingly, we find that the testimony constituted sufficient proof that appellant possessed a "firearm" as defined in R.C. 2923.11. Viewing the evidence in the light most favorable to the prosecution, we find the evidence is sufficient to convict appellant of having a weapon while under disability. *See State v. Lowe*, 8th Dist. No. 82997, 2004-Ohio-4622, 2004 WL 1944785; *State v. Stubblefield*, 8th Dist. No. 90687, 2008-Ohio-5348, 2008 WL 4599656; *State v. Webb*, 10th Dist. No. 10AP-289, 2010-Ohio-6122, 2010 WL 5141710; *State v. Jones*, 4th Dist. No. 09CA1,

2010-Ohio-865, 2010 WL 769215; *State v. Pride*, 10th Dist. No. 11AP-55, 2011-Ohio-6055, 2011 WL 5873378.

**{¶ 88}** Appellant next claims that the evidence presented at trial was insufficient to convict him of rape, kidnapping, and gross sexual imposition where the only link to appellant was the DNA found in K.K.'s underwear.

**{¶ 89}** Rather than challenging the state's failure to establish the elements of rape, kidnapping, and gross sexual imposition, appellant asserts that the state failed to present sufficient evidence that linked him to the crimes. Specifically, appellant argues that his convictions could not be beyond all reasonable doubt where only nine of the possible 15 genetic markers on the DNA sample matched him. Appellant's assertion is misplaced.

**{¶ 90}** At trial, Melissa Zielaskiewicz testified that, in comparing the DNA sample from appellant to the DNA profile found in K.K.'s underwear, she could not exclude appellant as the source of the DNA. Zielaskiewicz explained that the expected frequency of occurrence of the partial DNA profile from the sperm cutting from K.K.'s underwear is 1 in 1,481,000,000,000 unrelated individuals. Furthermore, Zielaskiewicz testified that the world's population is approximately 6.5 billion. In our view, the DNA evidence, coupled with K.K.'s detailed testimony, is sufficient evidence to convict appellant of rape, kidnapping, and gross sexual imposition.

**{¶ 91}** Appellant's eleventh assignment of error is overruled.

## XII. Allied Offenses

**{¶ 92}** In his twelfth assignment of error, appellant contends that his convictions for rape, kidnapping, and gross sexual imposition were allied offenses of similar import, committed neither separately nor with a separate animus.

**{¶ 93}** In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.
>
> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." [*State v.* ]*Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.
>
> Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the

offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. (Emphasis sic.) *Id*. at ¶ 48-51.

**{¶ 94}** The state concedes that the convictions for gross sexual imposition and kidnapping should merge because the movement of K.K. from the hallway to her bedroom was incidental to the crime of gross sexual imposition. However, the state argues that because the gross sexual imposition offense involved a separate animus than the rape, these convictions should not merge. We agree.

**{¶ 95}** In the instant case, appellant was convicted of gross sexual imposition based on conduct that involved rubbing and kissing K.K.'s buttocks. Separate from that, but following that course of events, the rape conviction was based on conduct whereby appellant penetrated K.K.'s vagina with his penis. Here, the conduct constituting the gross sexual imposition was not incidental to the conduct constituting the rape, but constituted a separate act. *State v. Knight*, 8th Dist. No. 89534, 2008-Ohio-579, 2008 WL 384240; *State v. Reid*, 8th Dist. No. 83206, 2004-Ohio-2018, 2004 WL 859172; *State v. Mason*, 10th Dist. Nos. 10AP-337 and 10AP-342, 2011-Ohio-3301, 2011 WL 2586685. Thus, the merger of the rape and gross sexual imposition offenses was not required because the offenses were separate acts committed with a separate animus and different criminal conduct.

{¶ 96} While we acknowledge that there may be circumstances under which gross sexual imposition and rape could be allied offenses of similar import, the *Johnson* court has recognized that this analysis may produce varying results in different cases involving the same set of offenses. *Johnson*, 128 Ohio St.3d 153, at ¶ 52. "But different results are permissible, given that the statute instructs courts to examine a defendant's conduct — an inherently subjective determination." *Id*.

{¶ 97} Accordingly, appellant's twelfth assignment of error is sustained only as to the kidnapping and gross sexual imposition convictions. We reverse appellant's sentence as to the kidnapping and gross sexual imposition convictions and remand for merger and resentencing, at which the state must elect which allied offense it will pursue against appellant.

## XIII. Sex Offender Registration

{¶ 98} In his thirteenth assignment of error, appellant argues that he was denied due process of law when the court applied the newly enacted Adam Walsh Act registration requirements to his offenses. Appellant contends that because the offenses occurred on May 7, 2003, he should be classified under Megans's Law and should not be subject to the reporting requirements under the Adam Walsh Act.[3]

---

[3] The Adam Walsh Act went into effect on January 1, 2008.

{¶ 99} In 1996, the General Assembly enacted Am.Sub.H.B. 180 ("Megan's Law"), which amended the state's sex offender registration process. *State v. Cook*, 83 Ohio St.3d 404, 406, 1998-Ohio-291, 700 N.E.2d 570. Portions of Megan's Law became effective January 1, 1997, and other portions of the law became effective July 1, 1997. *Id*.

{¶ 100} In 2007, the General Assembly enacted Am.Sub.S.B. 10, which repealed Megan's Law and replaced it with Ohio's version of the Adam Walsh Act ("S.B.10"). *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 20. S.B. 10 eliminated the categories of "sexually oriented offender," "habitual sex offender," and "sexual predator" under Megan's Law and replaced them with a three-tier classification system. *Id*. at ¶ 21.

{¶ 101} Under the new classification system adopted by S.B. 10, a trial court must designate the offender as either a Tier I, II, or III sex offender. R.C. 2950.01. "The new classification system places a much greater limit on the discretion of the trial court to categorize the offender, as S.B. 10 requires the trial court to simply place the offender into one of the three tiers based on their offense." *In re Copeland*, 3d Dist. No. 1-08-40, 2009-Ohio-190, 2009 WL 118078, ¶ 10.

{¶ 102} Recently, in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, defendant Williams pleaded guilty to engaging in unlawful sexual conduct with a minor. The offense occurred

prior to the enactment of S.B. 10. The Ohio Supreme Court held that applying S.B. 10 to Williams or "[other] defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws." *Id*. at ¶20. As such, the court reversed and remanded for resentencing under the law in effect at the time defendant committed the offense, i.e., Megan's Law. *Id*. at ¶ 22.

{¶ 103} In the case at bar, appellant committed the offense in 2003, and therefore he must be sentenced under Megan's Law, not S.B. 10. Accordingly, appellant's thirteenth assignment of error is sustained, and the matter is remanded to reclassify appellant in accordance with Megan's Law.

## XIV.   Court Costs

{¶ 104} In his fourteenth assignment of error, appellant argues that he was denied due process of law when the trial court failed to assess court costs in open court, and yet costs were assessed in the judgment entry. In support of his argument, appellant cites to the Ohio Supreme Court's decision in *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278.

{¶ 105} In *Joseph*, the court held that it is reversible error under Crim.R. 43(A) for the trial court to impose costs in its sentencing entry when it did not impose those costs in open court at the sentencing hearing. *Id*. at ¶ 22. The court reasoned that the defendant was denied the opportunity to claim

indigency and to seek a waiver of the payment of court costs before the trial court because the trial court did not mention costs at the sentencing hearing. *Id.* The state concedes that the trial court failed to assess costs in open court.

{¶ 106} Appellant's fourteenth assignment of error is sustained. The matter is remanded to the trial court to have costs properly assessed.

{¶ 107} This cause is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, J., CONCURS;
MELODY J. STEWART, P.J., CONCURS IN JUDGMENT ONLY
APPENDIX

Appellant's 14 assignments of error:

"I.     Defendant was denied due process of law when the court overruled his motion to suppress."

"II.    Defendant was denied due process of law when the court overruled his motion to dismiss by reason of the unreasonable delay in commencing a prosecution."

"III.   Defendant was denied due process of law when the court refused to appropriate funds for an expert opinion to evaluate DNA evidence."

"IV.    Defendant was denied his constitutional right of confrontation and cross-examination."

"V.     Defendant was denied due process of law and his right to present a defense when the court refused to instruct on the lesser offense of sexual battery and abduction."

"VI.    Defendant was denied due process of law when the court refused to instruct, with reference to the kidnapping count, that a jury make a determination as to whether the victim was released in a safe place unharmed."

"VII.   Defendant was denied a fair trial by reason of cumulative errors committed during the course of the trial."

"VIII.  Defendant was denied due process of law and assistance of counsel when the court rendered its verdict without allowing defendant or his counsel to make a closing statement."

"IX.    Defendant was denied due process of law when the court found defendant possessed a firearm when the jury specifically found that defendant did not possess a firearm."

"X.     Defendant was denied due process of law when he was sentenced on one count of rape after the jury found him not guilty on two identical counts of rape."

"XI.    Defendant was denied due process of law when the court overruled a motion for judgment of acquittal."

"XII. Defendant was subjected to unconstitutional multiple punishments when the court separately sentenced defendant for rape, kidnapping and gross sexual imposition."

"XIII.  Defendant was denied due process of law when the court applied the newly enacted Adam Walsh Act's registration requirements to defendant's offenses which occurred prior to the enactment of the Act."

"XIV. Defendant was denied due process of law when the court did not assess costs in open court and costs were assessed in the judgment entry."